**NATIONAL LABOR RELATIONS BOARD v. CROSBY CHEMICALS, Inc.**

**No. 13332.**

United States Court of Appeals
Fifth Circuit.

April 3, 1951.

92

Richard C. Keenan, Chief Law Officer, National Labor Relations Bd., New Orleans, La., A. Norman Somers, Asst. General Counsel, David P. Findling, Associate General Counsel, National Labor Relations Bd., Washington, D. C., for petitioner.

Karl H. Mueller, Fort Worth, Tex., Allen R. LeCompte, DeRidder, La., for respondent.

Before HUTCHESON, Chief Judge, and McCORD, and BORAH, Circuit Judges.

. BORAH, Circuit Judge.

This is a petition of the National Labor Relations Board for enforcement of its order issued against respondent, Crosby Chemicals, Inc., pursuant to Section 10(c) of the National Labor Relations Act, as amended.[1]

On August 31, 1948 the Board issued its complaint alleging that respondent had engaged in and was engaging in unfair labor practices[2] affecting commerce and copies of the complaint and amended charges, accompanied by notice of the hearing to be had, were duly served.[3] Thereafter respondent answered, admitting certain allegations relating to the nature of its business but specifically denying that it committed the unfair labor practices alleged.

A hearing was had before a duly designated trial examiner, who issued his intermediate report, finding that the respondent had engaged in and was engaging in certain unfair labor practices,[4] and recommended that respondent be ordered to cease and desist therefrom and to take certain affirmative action. Upon exceptions duly filed, the board reviewed the ruling of the trial examiner and found: that respondent interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed them in Section 7 of the Act; that in its support and domination of Beauregard Chemicals Association, an unaffiliated union, respondent violated Sections 8(1) and (2) of the Act and Sections 8(a) (1) and (2) of the amended Act; that in violation of Section 8(3) of the Act and Section 8(a) (3) of the amended Act respondent discriminatorily discharged Jack Dempsey Cochran; that by refusing to reinstate and thereby discharging fourteen

1. 29 U.S.C.A., § 141 et seq. 

2. The complaint charged unfair labor practices affecting commerce within the meaning of Sections 8(1), (2), (3), and (5) of the Act, 49 Stat. 449, and Sections 8(a) (1), (2), (3), and (5) of the Act as amended by Public Law 101, 80th Congress, first sess. Ch. 120.

3. Copies were served upon the respondent, Local Lodge 1225 of the International As-

sociation of Machinists, the International Union of Operating Engineers, the Beauregard Chemicals Association, and Local 1530, United Brotherhood of Carpenters & Joiners of America, AFL.

4. The trial examiner found violations of Sections 8(1), (2), (3), and (5) of the Act, and Sections 8(a) (1), (2), (3), and (5) of the amended Act.

members[5] of the International Association of Machinists respondent discriminated against these employees with respect to their hire and tenure of employment within the meaning of Section 8(3) of the Act and Section 8(a) (3) of the amended Act. The Board, however, did not agree with the trial examiner's finding that respondent unlawfully refused to bargain with the International Association of Machinists on and after April 8, 1947 and, accordingly, dismissed the complaint insofar as it alleged a refusal to bargain within the meaning of Section 8(5) of the Act and Section 8(a) (5) of the amended Act.

On the basis of its findings, the board ordered that respondent cease and desist from: dominating and interfering with Beauregard Chemicals Association; recognizing Beauregard Chemicals, or any successor thereto, as the representative of any of its employees; giving effect to the contract of January 6, 1948 with Beauregard Chemicals or to any amendment, extension, or renewal thereof; encouraging membership in Beauregard Chemicals, or any other labor organization, and discouraging membership in the International Association of Machinists, or any other labor organization, by discharging or refusing to reinstate any of its employees or by discriminating in regard to their hire or tenure of employment; in any other manner interfering with, restraining, or coercing employees in the exercise of their rights under the Act. The board further ordered that the respondent: withdraw all recognition from and completely disestablish Beauregard Chemicals; offer reinstatement to the fourteen named machinists and make them whole for any loss of pay they may have suffered by reason of respondent's discriminatory refusal to reinstate them and respondent's discharge of them on May 2, 1947; make Jack Dempsey Cochran whole for any loss of pay he may have suf-fered by reason of respondent's discrimination against him.[6]

Respondent resists enforcement of the order only insofar as it relates to the alleged discriminatory refusal to reinstate the fourteen Machinists. As to the other violations found by the board, which are either admitted or not contested by respondent, it is sufficient to say that the findings of the board are fully supported by the evidence as a whole, and the orders based on these violations should and will be enforced.

As to the challenged findings and conclusions, the evidence shows that on April 1, 1947 the Operating Engineer's Union called a strike at respondent's DeRidder, Louisiana plant and established a picket line to enforce its demand for recognition as the exclusive bargaining representative of all operating and maintenance employees. Upon the establishment of the picket line about the plant, all of respondent's employees, including the fourteen machinists employed in respondent's machine shop, refused to cross the picket line and respondent was forced to close down its operations. After the plant closed down, organizational activity began on behalf of Beauregard Chemicals, an unaffiliated union. On April 10, 1947, while the Engineer's strike continued, the Machinists met and decided that they would also go on strike, agreeing that none of its members would return to work until respondent recognized it as the collective bargaining representative of the machine shop employees and permitted all of them to return to work. At this meeting, Carl Shirley was appointed chairman of a three-man shop committee, and the committee was instructed to contact representatives of Crosby Chemicals for the purpose of securing recognition of Local 1225 of the International Association of Machinists as the bargaining agent for the men within the

5. The fourteen Machinists in question are: George G. Buchanan, T. T. Downs, T. L. Dans, C. F. Fleming, Roy Grantham, Fred Henderson, J. E. Langston, R. J. Lester, Calvin Miers, J. M. Offutt, R. O. Sells, Carl Shirley, J. H. Swearengen and W. D. Woodley.

6. The Board found that respondent, at the hearing before the trial examiner, made a bona fide offer of reinstatement to Cochran.

four walls of the machine shop. On the same day, the shop committee called on respondent's labor relations consultant and requested that respondent recognize the Machinists as their bargaining agent and informed him that absent such recognition the Machinists would not return to work. On April 21, 1947 respondent sent telegrams to representatives of the several unions, including the Machinists, advising that the plant would resume operations on April 23, and offering employment without favor or discrimination to all who were employees as of April 1. The plant was re-opened on April 23rd, however the machine shop employees did not go back to work but continued their strike for recognition. On April 24th another regular meeting of the Machinists was held, at which time they reaffirmed their decision to remain on strike for recognition and group reinstatement. The next day, the Machinists' representatives again met with respondent's labor relations consultant and renewed their request for recognition. Again, on April 26th, Shirley and Swearengen informed respondent's supervisor, Brondum, that the only way the Machinists would go back to work would be as a unit and with bargaining rights. Thereafter, on May 2, 1947, Shirley and Swearengen of the Machinist's shop committee visited the picket line on their return from a fishing trip. At that time a group of men, supposedly authorized to represent the various crafts there present, were holding a meeting and it was proposed that they notify and request the company officials to reinstate all of the men who had been in its employment when the strike occurred subject to a consent election to determine representation. Shirley and Swearengen, after consulting with one or two other Machinists who happened to be present, decided to go along with the proposal, reasoning that if they

got in that way it would only take a little longer to secure what they wanted and had been contending for all along. Thereafter this group, denominating itself as a "Union Committee", sent the following telegram to respondent's president: "In order to restore industrial peace to DeRidder Louisiana earnestly request that your Company restore all employees who were on your payroll as of April 1 1947 back on your payroll stop In return the unions will rest the matter of representation before the NLRB and will abide by their findings."

Shirley testified that he did not see the telegram and did not know exactly what wording was in it, but both he and Swearengen, who were the only witnesses to testify concerning the circumstances under which the telegram was sent, were positive in their statements that the proposal in which they joined was conditioned on a consent election.[7] In reply to the telegram, respondent's president sent a wire to the "Union Committee" informing it that the plant had resumed operations and of necessity had employed certain new employees but that respondent would continue to hire employees on its payroll as of April 1, until the required personnel complement had been reached and respondent urged that all old employees report to the employment office so that those whose services were required might be reinstated. None of the Machinists applied for reinstatement.

The board found that respondent discriminated in regard to hire and tenure of employment of the fourteen Machinists. It concluded that the machine shop employees, as of April 10, 1947, were on strike for economic reasons of their own but when Beauregard Chemicals made its appearance on that date and respondent immediately began to assist and support that

7. Under examination by the General Counsel, Shirley testified:

"Q. With regard to that offer (the May 2nd telegram) and that response, was there any further action taken? A. You mean in general.

"Q. By you? A. By Me?

"Q. And your committee? A. By our committee and by our group as a whole, we then assumed the same position

that we had all along. We were still asking for recognition before we would go back into the plant.

"Q. But you had agreed——. A. If everybody went back under those conditions described, we would have gone back with them.

"Q. Subject to a consent election? A. Yes, that is right.

organization, it thereby intruded upon the employee's right to freedom of choice of representatives, with the consequent effect of prolonging the strike, and by so doing the economic strike was transformed into an unfair labor practice strike. The board then referred to the telegram of May 2, as an unconditional request for reinstatement and concluded that in the absence of some valid reason for discharge respondent was duty bound to reinstate the Machinists, even though in some instances other employees had been assigned to their jobs.

There is no question but that where a strike is initially undertaken for economic reasons but is prolonged by reason of the employer's intervening unfair labor practices, the employer is in the same position he would have been in had his unfair labor practice caused the strike in the first place and is bound to reinstate all strikers and discharge all those hired to replace them during the strike. N. L. R. B. v. Remington Rand, Inc., 2 Cir., 130 F.2d 919. Indeed, respondent does not question this general rule but contends that the board erred in concluding that the telegram of May 2, 1947 constituted an unconditional request of the Machinists for reinstatement. Respondent insists that the material and controlling fact, as established by the undisputed testimony of the board's witnesses, is that an agreement to a consent election was made a condition of the proposal in which the Machinists' representatives, Shirley and Swearengen, concurred and that, therefore, the record compels the conclusion that no unconditional request for reinstatement was ever made on the behalf of the Machinists, either by the telegram of May 2nd or otherwise. We agree with respondent.

Furthermore, we are not pursuaded that the language of the telegram warrants the construction that it constitutes an unconditional offer to return to work on the part of all employees.[8] Shirley, the only witness to testify on the subject, did not so construe the telegram and it is logical to assume, in view of the proposal which gave rise to the telegram, that its framers had a consent election in mind. Moreover, no consent on the part of respondent was required if they were simply desirous of instituting formal representation proceedings before the board under Section 9 of the Act.

Concluding, as we do, that there was no unconditional request for reinstatement by the striking Machinists, it follows that the contested portion of the board's order requiring reinstatement of and payment of back pay to the fourteen Machinists and the posting of notices with respect thereto cannot be enforced.

Enforced in part and denied in part.

---

8. There is no evidence in the record to show that the signers of the telegram were authorized to act for all employees.