**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**J. H. RUTTER–REX MANUFACTURING COMPANY, Inc., Respondent.**

No. 16422.

United States Court of Appeals
Fifth Circuit.

June 10, 1957.

Arnold Ordman, Atty., N. L. R. B., Stephen Leonard, Associate Gen. Counsel, N. L. R. B., Washington, D. C., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John E. Jay, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

John M. Scott, Fort Worth, Tex., Henry J. Read, New Orleans, La., John Edward Price, Samuels, Brown, Herman & Scott, Fort Worth, Tex., for respondents.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

The question, as framed by the Employer, is whether, as claimed by it, the Union's action in suddenly breaking off negotiations and calling of the strike of April 21, 1954 in repudiation of its promise not to do so, relieved the Employer from the duty to bargain thereafter.

Because its conduct has been so positive, and its justification in terms of right so emphatic,[1] we need not concern ourselves with the long history of this struggle between Employer and Union, part of which has once before come here, N. L. R. B. v. J. H. Rutter-Rex Mfg. Co., 5 Cir., 229 F.2d 816, and which occupied the attention of all parties in a sixteen-day hearing before the Trial Examiner. He held that the strike was justified in view of what he concluded was a failure fairly to bargain on Employer's part. The Board found it unnecessary precisely to decide this issue. For, it held, that the Union did not breach its duty mutually to bargain and if, as claimed by the Employer, the strike was an "economic" not an "unfair labor" strike, it became the latter almost immediately because the Employer refused thereafter to bargain at all.

The duty to bargain with this Union was both generally and specifically on the Employer. The Union, after an election January 25, 1954, had just been certified February 2, 1954. For the next twelve months it was the exclusive bargaining representative, Section 9(a), 9(c) (3), 29 U.S.C.A. § 159(a), 159(c) (3), see Parks v. Atlanta Printing Pressmen & Assistant's Union #8, 5 Cir., 243 F.2d 284; N. L. R. B. v. White Construction & Engineering Co., Inc., 5 Cir., 204 F.2d 950, 953. The duty to bargain did not terminate with the calling or execution of the strike. The strike, or threat of it, so carefully recognized as a right

---

1. In various ways the Employer likens the Union's conduct to an unprovoked assault and, in that figure, in briefs here and before the Board, candidly describes its position:

"* * * the conduct of the union excused the [Employer], after the unprovoked assault, from the obligation to further seek to bargain with the assailant [Union], and * * * [the Employer's] acts after the strike started were justified by the union's breach of the mutual and reciprocal duty to bargain in good faith."

"* * * plainly stated, Respondent [Employer] * * * exercised the ancient right of self-defense against an unprovoked assault."

"Throughout the case the Respondent [Employer] has pleaded and said in its brief that 'it abandoned its efforts to bargain with the union when the strike occurred.' That statement is true."

And the Employer framed the legal question thus: "1. Whether respondent was relieved of the duty to bargain after the strike occurred by reason of the conduct of the union before the strike started."

in the Act, Section 13, 29 U.S.C.A. § 163, is a means of self-help allowed to a union as pressure in the bargaining process. How or why the strike is called, or how conducted, may well have significant effect upon the right of strikers for reinstatement or reemployment or in other respects not necessary to indicate. But the mere fact that a Union has without justification precipitated a strike does not make the union or the employees for whom it is the bargaining representative outlaws so that they forfeit all of the benefits of the Act. The calling of such a strike does not infect all that thereafter occurs with the virus of that action. A strike does not in and of itself suspend the bargaining obligation, Jeffery-De Witt Insulator Co. v. N. L. R. B., 4 Cir., 91 F.2d 134, 112 A.L.R. 948, certiorari denied 302 U.S. 731, 58 S.Ct. 55, 82 L.Ed. 565; N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, certiorari denied 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549; N. L. R. B. v. U. S. Cold Storage Corp., 5 Cir., 203 F.2d 924, certiorari denied, 346 U.S. 818, 74 S.Ct. 30, 98 L. Ed. 344, which would encompass a willingness, not a refusal, to meet and confer with the Union, N. L. R. B. v. U. S. Cold Storage Corp., supra; N. L. R. B. v. Jacobs Mfg. Co., 2 Cir., 196 F.2d 680, 683.

The Employer does not really challenge this conclusion. So, with the possibility that advocacy in this earnest zeal perhaps leads the Employer to overstate its contention, note 1, supra, what the claim comes down to is this: the Union, from the outset of the three-session bargaining process, pursued a pattern of stubborn, inflexible, purposeful, unyielding, intransigent insistence on the so-called Potofsky demands; it meant either to demand literal acceptance or doggedly pursue the demand to the point where, with likely employer unwillingness to accept any such ultimatum, the Union could contrive the pretense of a refusal by the Employer to bargain in good faith and thus have apparent cause for an unfair labor practice strike.

■ With this as the point of departure, the Employer then asserts that this wrongful conduct was not only the cause of the strike, but by its nature was a continuing thing that made the prospect of bargaining as futile after the strike as before.

Whether that would have justified the Employer's reprisals, we need not determine. For the contention has as its base a *factual* situation. And yet neither Examiner nor Board held that such was the purpose or plan of the Union. On the contrary, the Trial Examiner, after rejecting the General Counsel's motion to strike this pleaded defense of Union bad faith, held as a fact that no such bad faith was made out. The Board, in its analysis of the case, held that, "The record does not support the Respondent's contention that its conduct was justified because the Union itself failed in its obligation to bargain in good faith, or struck in violation of its promise not to do so. No charge of unfair labor practice was filed against the Union, and we find no credible evidence that the Union failed to discharge its statutory duty to bargain on behalf of the employees." This was certainly not a fact finding in favor of the Employer's contention and in a record presenting substantial credibility conflicts as did this one, we could not possibly conclude as a matter of law that the Board was compelled to so hold.

The result is that the excuse offered for not bargaining after the strike—that the Union's intransigence before the strike was such that, continuing afterwards, it would make bargaining a hollow, empty hope, was not established as a fact. As a minimum, to satisfy its own claim, the Employer had to establish this to make the refusal thereafter to bargain with the Union the exercise, so well described by it, of "the ancient right of self-defense against an unprovoked assault," a right which, pitting force against force either as a means of avoiding injury from the initial wrong or as punitive coercion to deter like conduct, is in these circumstances not open under the Act.

The Employer, *receding* somewhat from its forthright position that the asserted former wrong gave it a right of like reprisal, faintly suggests that if it

had thereafter a duty to bargain, it was merely to meet with, not seek out, the Union. As its next step, it then urges that, on its thesis the Union having wrongfully precipitated the strike, there was no showing that the Union either desired to renew bargaining or that it would have been fruitful. The Board found, with ample basis,[2] to the contrary. This contention, on this record, also has all of the appearances of an afterthought. For the Employer's actions were not those of one, patiently waiting to receive negotiators, required to take independent action when the representatives did not arrive. On the contrary, from the beginning, the Employer felt that it was released altogether from any duty either to seek out, receive, or talk to the Union.

Faced with this continuing duty to bargain which it articulately denied, the Employer unilaterally made substantial changes and granted significant new benefits covering such things as working conditions, base rate of pay increased, vacation and production bonuses and the like. These actions suffered from a dual infirmity. First, their purpose and effect was undermining[3] the Union as bargaining agent, and thus tended to prolong the strike. And second, they were unauthorized negotiations or decisions between employer and individual employees and not, as required, through the statutory bargaining representative. Medo Photo Supply Corp. v. N. L. R. B., 321 U. S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007; N. L. R. B. v. Stewart, 5 Cir., 207 F.2d 8, 10; Armstrong Cork Co. v. N. L. R. B., 5 Cir., 211 F.2d 843, 847; May Department Stores v. N. L. R. B., 326 U.S. 376, 383–385, 66 S.Ct. 203, 90 L.Ed. 145.

Once we find, as we do, sufficient basis for the Board's conclusion of the 8(a) (1) and 8(a) (5) violations, we think there is little foundation to the Employer's second contention. The Employer asserts that since the strike had not yet ended and no application for reinstatement by striking employees had been made or refused, the Order of reinstatement[4] was premature or punitive or both.

This is certainly not a "punitive" order in the forbidden sense, Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 11–12, 61 S.Ct. 77, 85 L.Ed. 6. It satisfies easily both of the dual tests of N. L. R. B. v. Coats & Clark, Inc., 5 Cir., 241 F.2d 556, 561. To the strikers it makes those "* * * whole who [have] been deprived of a recognized interest by acts that constitute a violation of the Act * * *" and from the viewpoint of the Employer this order is " * * * designed to prevent the violator from benefiting by his misdeed

2. The Union's telegram to the Employer sent a few hours before the strike, April 21, 1954, had the dual purpose of (1) withdrawing the demand for a Union security provision (to avoid prospective injunctive relief under LSA–Revised Statutes 23:881–23:888, Act No. 252 of 1954) and (2) a request for continued negotiations:

"This is to advise that effective immediately our demand for union security is withdrawn. However, all other demands remain in full force and effect. We stand ready to negotiate our differences at your convenience."

The request to negotiate was expressed again in the Union's open letter June 28, 1954 to the Employer.

3. The Board also found that a course of conduct by the Employer, including threats of reprisal, promises and grants of benefits, interrogation concerning Union activities and solicitation of strikers to return to work, constituted a violation of 8(a) (1), 29 U.S.C.A. § 158(a). The Employer, denying the validity of these charges, virtually acquiesces in them except insofar as they relate to the futility of bargaining and the lack of any duty to bargain once the strike began.

4. "(b) Upon application, offer immediate and full reinstatement to their former or substantial equivalent positions to all those employees who went on strike on April 21, 1954, or thereafter, without prejudice to their seniority or other rights and privileges, dismissing if necessary all persons hired on or after that date, and make such applicants whole for any loss of pay suffered by reason of the Respondent's refusal, if any to reinstate them, in the manner set forth in the section of the Intermediate Report entitled 'The Remedy';"

\* \* \*." The difficulties which the Employer now faces were not unknown when it set out on its forthright but risky course of declining to bargain at all. For once the strike is an unfair labor strike, Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 278, 76 S.Ct. 349, 100 L.Ed. 309, or becomes such, N. L. R. B. v. Crosby Chemicals Inc., 5 Cir., 188 F.2d 91, 95, the employer is compelled under the Act to reinstate the strikers upon application even though it means discharging replacements hired during the strike.

The numerous questions which the Employer insists now plague it, such as the possibility of non-strikers voluntarily terminating employment with subsequent replacement during the strike, the availability of work at various times considering the nature of these manufacturing operations, the number of strikers who may have declared their unwillingness to return to work, the calculation of the lost pay if any, the misconduct of some specified strikers which might afford a basis for denying reinstatement, are not foreclosed. Their resolution can come either in further administrative proceedings before and through the Board [5] or in direct contempt proceedings, if brought before us, for failure to comply with our order decreeing enforcement.

The employer certainly has no right to insist that until the strike whose continuation is a direct by-product of his own Section 8(a) (5) violation is terminated, no order of reinstatement can validly be made. Nor can the employer confound its violation by demanding that all of the matters be threshed out in the initial Board proceedings. Undertaking to ascertain the myriad of details respecting the right to, and extent of, the remedy as to each specific striker out of a large labor force would complicate the proceeding and perhaps make it endless. The final order declaring it to be an unfair labor strike cannot be obtained unless the hearing on the main issues can end. Until that is done, there is no basis for an order of reinstatement, and nothing upon which, as a foundation for a claim for reinstatement with possible restitution, the employee could make a demand for reinstatement. It is unlike the simple situation where the strike is in fact over and all issues related to past actions, cf. Kansas Milling Co. v. N. L. R. B., 10 Cir., 185 F.2d 413, 420–421, where the Tenth Circuit followed a somewhat different procedure.

The Board's order has ample basis in fact and finding, is free from procedural defects and preserves fully the Employer's rights incident to the order of reinstatement.

Order enforced.

5. N. L. R. B. v. Royal Palm Ice Co., 5 Cir., 201 F.2d 667, 668, quoting with approval Home Beneficial Life Insurance Co., Inc., v. N. L. R. B., 4 Cir., 172 F. 2d 62, 63, " \* \* \* The Board has full power \* \* \* to take evidence and make findings and orders carrying out the general order for reinstatement and back pay which this Court approved. \* \* \* After the Board has made orders with respect to specific reinstatements or awards of back pay appropriate application can be made to this Court, if necessary, to enforce or set them aside." N. L. R. B. v. Norfolk Shipbuilding and Drydock Corp., 4 Cir., 172 F.2d 813, 816; N. L. R. B. v. Bird Machine Co., 1 Cir., 174 F.2d 404, 406; N. L. R. B. v. Royal Palm Ice Co., 5 Cir., 201 F.2d 667, 668; N. L. R. B. v. Stilley Plywood Co., Inc., 4 Cir., 199 F.2d 319, 321, certiorari denied 344 U.S. 933, 73 S.Ct. 504, 97 L.Ed. 718; and see on this point N. L. R. B. v. Brown & Root, Inc., 8 Cir., 203 F.2d 139.