J. H. RUTTER–REX MANUFACTURING COMPANY, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

AMALGAMATED CLOTHING WORK-ERS OF AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 23744, 23909.

United States Court of Appeals Fifth Circuit.

July 23, 1968.

Rehearings En Banc Denied Oct 1, 1968.

Henry J. Read, Peter H. Beer, Richard B. Montgomery, New Orleans, La., for J. H. Rutter-Rex Mfg. Co. Inc.

Ralph N. Jackson, New Orleans, La., Jacob Sheinkman, James J. Graham, New York City, for Amalgamated Clothing Workers of America, AFL-CIO.

Marcel Mallet-Prevost, Asst. Gen. Counsel, William S. Bishop, Atty., NLRB, Washington, D. C., for National Labor Relations Board.

Ralph N. Jackson, New Orleans, La., for intervenor.

Before COLEMAN and SIMPSON, Circuit Judges, and DAWKINS, District Judge.

COLEMAN, Circuit Judge:

This litigation beclouds the highly respectable idea that all litigation must, some day, come to an end. 164 volumes of the Federal Reporter [2d] have been published since this case first appeared in this Court, 229 F.2d 816, 1956. Indeed, the controversy has survived a complete turnover, save one, of the judges in active service on this Court.

## I

To go back to the origins of the difficulty: In May, 1953, the Amalgamated Clothing Workers of America, CIO, attempted to organize the 600 employees of the J. H. Rutter-Rex Manufacturing Company, Inc. On July 30, 1953, the president of the Company, made a speech at the plant in which he stated that "he would not tolerate 'any damn union in the plant'; that the last time the union had tried to organize his plant he had 'personally fired 300 girls', and would fire 400 to 500 more 'if necessary'", 229 F.2d at 817. The record in that appeal further reveals that a Company vice-president had exercised impermissible surveillance of employee union activities, had threatened to fire other employees for their union activities, and had coercively interrogated others. Some employees had been discriminatorily discharged. The situation was such that in its opinion reviewing that stage of the case a panel of this Court [Chief Judge Hutcheson and Judges Rives and Cameron] stated that the record was permeated throughout with cogent testimony of company antipathy toward the union, 229 F.2d at 819. The Court directed enforcement of the Board Order, which had found Rutter-Rex guilty of § 8(a) (1) and § 8(a) (3) violations of the National Labor Relations Act.

In 1957, we had the parties again, 245 F.2d 594. That proceeding was initiated by a petition of the Board to enforce its

order dated February 13, 1956, requiring Rutter-Rex to offer immediate and full reinstatement to certain of its former employees. Again, this Court [Chief Judge Hutcheson and Judges Jones and Brown] decreed enforcement.

We recite the foregoing as of some assistance to an understanding of the issues we are now required to resolve. It convinces us, of course, that Rutter-Rex is not, and has not been, a babe in the woods, now about to be victimized for ignorance or inadvertent ineptitude in the field of employer-employee relations, as regulated by the National Labor Relations Act.

Enforcing the Board Order, our decree of August 19, 1957, by reference thereto, directed the Company to offer reinstatement, upon application, to all employees who went on strike on April 21, 1954, or thereafter, and to:

> "make whole such strikers for any loss of pay they may have suffered by reason of the Company's refusal, if any, to reinstate them, by paying to each of them a sum of money equal to that which he would normally have earned, less his net earnings, during the period from 5 days after the date on which he applies for reinstatement to the date of the Company's offer of reinstatement. Loss of pay shall be computed on a quarterly basis", [115 NLRB 388].

The present controversy was commenced on November 14, 1961, by a Backpay Specification issued by the Regional Director, which notified the Company of its right to file an answer thereto within fifteen days. The Company filed an application in this Court for an injunction, seeking to enjoin the Board from proceeding further with the Backpay Specification because of the lapse of time in filing it. We denied a permanent injunction, 305 F.2d 242, concluding that we should not take any further action *prior to such time as a final order might be entered [by the Board] or other final action taken.* Special note is taken, however, that this Court then asserted that "there has been inordinate delay in this case." Inordinate means "in excess of reasonable limits".

We now have before us the petition of the Company, filed June 8, 1966, to review the Supplemental [Backpay] Order of the Board issued on June 3, 1966, 158 NLRB 1414. We likewise have the petition of the Amalgamated Clothing Workers of America, AFL-CIO (the Union) to review, set aside, and modify certain portions of that order. By its answer, the Board requests that its Supplemental Order be enforced in full. These consolidated proceedings [No. 23,744 and No. 23,909] present us with a record 5297 pages in length, in addition to 297 pages of Exhibits, and more than 600 pages of briefs. We have had the case under analysis and consideration for more than half a year, as a result of which we are convinced that the appropriate disposition of the issues raised is really not so abstruse or complex as counsel, in their commendable zeal, have conceived it to be. All contentions have been thoroughly considered but this opinion will discuss only those regarded as meritorious and necessary to the appropriate disposition of the case. There is no inclination that the opinion shall unnecessarily rival the length, or the volume, of the material submitted.

As a matter of fact, we see that most, if not all, of the contentions on behalf of the Company as to generally controlling legal principles were raised and settled in W. C. Nabors Co. v. National Labor Relations Board, 5 Cir., 1963, 323 F.2d 686. *Nabors* was a reinstatement and backpay case, in which the Board delayed its Backpay Specification from May 31, 1955, to March 25, 1959, a period of almost four years. We there held that Nabors could not avail itself of the defense of laches, could not invoke state statutes of limitation, and could not introduce evidence to show irreparable injury caused by undue delay. The Supreme Court denied certiorari, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964). *Nabors* further held that backpay, as used in the applicable statute, includes moneys which it is reasonably

found that an employee would actually have received in the absence of unlawful discrimination; that lack of available jobs is an affirmative defense, that the burden of establishing such a defense rests on the employer, and the burden likewise rests with an employer attempting to prove a former employee's failure to make reasonable search for other employment.

## II

We start our analysis of the pending issues by recalling that the Company began digging its costly pit by refusing to bargain with the duly certified Union, National Labor Relations Board v. J. H. Rutter-Rex Manufacturing Co., 5 Cir., 1957, 245 F.2d at 595, 596. The Board ordered reinstatement of the striking employees. On June 19, 1957, we granted enforcement. The Order so enforced required reinstatement within five days after application therefor, plus backpay until the date of the offer of reinstatement, loss of pay to be computed on a quarterly basis.

The Backpay Specification of November, 1961, asserted backpay claims in the total amount of $342,000, up to July 1, 1961. Six hundred employees had gone on strike. 211 were reinstated before the strike ended. 299 were out on strike when the Union called it off, April 21, 1954. 132 were reinstated before the end of 1955, and by the close of 1956 there were but 70 who had not been reinstated. The Company contended that there were fifteen employees who were not entitled to reinstatement because they had been guilty of strike misconduct, including violence. The Board agreed as to ten of these. The Board disqualified two employees for failure to apply for reinstatement, two were disqualified for abandoning the industry, and one was disqualified for non-availability.

In the order now under review, the Board awarded $159,016.32 in backpay to 171 individuals, less than half of the amount asserted in the Specification. The Trial Examiner denied backpay to approximately thirty-five. On review,

the Board in its Supplemental decision and order of June 3, 1966, 158 NLRB 1414, adopted the findings, conclusions and recommendations of the Examiner in substantial part, and modified the Examiner's award as to twelve former employees.

For reasons to be discussed, the Company says that it should not have to pay anything.

## III

■ The Union says that the ten employees should not have been disqualified for strike misconduct and that other employees were erroneously denied backpay in varying amounts. We are of the opinion that the findings of the Board in these cases are substantially supported by the record and that the order correctly applied the law. As to these items we decline to upset the Order.

■ Nor do we approve Union contentions that the Board erred both in reducing the gross backpay claims by 6% to take care of absences and in awarding 6% interest on the backpay awards from June 2, 1964, rather than from the date of discrimination.

## IV

We now proceed to consider the Company attack. As usual, the Company says, in effect, that all is the fault of the Board; the Board responds that all is the fault of the employer. As often happens, we do not wholly agree with either. We do agree with the Board that:

"It is not the function of this Court to try the case de novo or to substitute its own appraisal of the evidence for that of the Board. If the Board has conceived the law correctly, if it has not acted arbitrarily or capriciously, and if its findings are supported by 'substantial evidence on the record considered as a whole,' they are conclusive and binding on this Court even though we might have made different findings upon an independent consideration of the same evidence." N.L.R.B. v. Brown & Root, Inc., 8 Cir., 1963, 311 F.2d 447, 451.

## A. OUR 1957 OPINION.

In N.L.R.B. v. J. H. Rutter-Rex Manufacturing Company, 245 F.2d 594, we held that (1) the duty of the Company to bargain with the certified Union did not terminate with the calling or execution of the strike, (2) the Company had been guilty of unfair labor practices in refusing to bargain collectively with the Union and in interfering with the employees in the exercise of their right to organize and bargain collectively, and (3) the Union had not been guilty of any practice justifying employer in breaking off bargaining negotiations.

In the present proceeding, which stems from that decision, the Company vigorously and repeatedly insists that our language at 245 F.2d 598 was not clear and unequivocal, that it left certain questions open to further action. The language so denominated was as follows:

"The difficulties which the Employer now faces were not unknown when it set out on its forthright but risky course of declining to bargain at all. For once the strike is an unfair labor strike, Mastro Plastics Corp. v. N.L.R.B., 350 U.S. 270, 278, 76 S.Ct. 349, 100 L.Ed. 309, or becomes such, N.L.R.B. v. Crosby Chemicals, Inc., 5 Cir., 188 F.2d 91, 95, the employer is compelled under the Act to reinstate the strikers upon application even though it means discharging replacements hired during the strike.

"The numerous questions which the Employer insists now plague it, such as the possibility of non-strikers voluntarily terminating employment with subsequent replacement during the strike, the availability of work at various times considering the nature of these manufacturing operations, the number of strikers who may have declared their unwillingness to return to work, the calculation of the lost pay if any, the misconduct of some specified strikers which might afford a basis for denying reinstatement, are not foreclosed. Their resolution can come either in further administrative proceedings before and through the Board or in direct contempt proceedings, if brought before us, for failure to comply with our order decreeing enforcement.

"The employer certainly has no right to insist that until the strike whose continuation is a direct by-product of his own Section 8(a) (5) violation is terminated, no order of reinstatement can validly be made. Nor can the employer confound its violation by demanding that all of the matters be threshed out in the initial Board proceedings. Undertaking to ascertain the myriad of details respecting the right to, and extent of, the remedy as to each specific striker out of a large labor force would complicate the proceeding and perhaps make it endless."

We are of the opinion that the argument as to confusion or misunderstanding is without any real merit. The Company, experienced in labor disputes and represented by outstanding counsel, could not have possibly overlooked the plain command of the Court's decree that the employees should be reinstated upon application and made whole for any loss of pay they might have suffered by a refusal to reinstate. This was the very heart of the litigation and the decree which followed. It just could not have been misunderstood.

Certainly, the Company was entitled to the benefit of the law as to failure to apply, the availability of jobs, bona fide offers to return, the availability of work, and the like. The focal consideration here is that if any of these items were hindering compliance with the enforced order then the Company could have applied to this Court for a clarification of its decree or it could have moved the Board to hear and settle any problem of material importance. The indisputable fact is that the Company applied for no such relief. It is too late now for us to entertain this plea. Upon the consideration of the record as a whole we are convinced that nothing in the opinion actually could reasonably

have been confusing, or a stumbling block to compliance.

## B. IMPOSSIBILITY OR FAILURE OF COMPLIANCE.

On April 5, 1955, the Union notified Rutter-Rex that the employees had voted on March 31, 1955, to terminate the strike. The second paragraph of the letter stated "Please be advised that each of the employees whose names are listed on the attached sheets hereby offers to return to work for your Company unconditionally and immediately. Kindly inform us when and where these employees should return to work".

Attached was a list of 114 employees, with their street addresses indicated.

On April 8, an additional list of 25 names was submitted.

On April 11, Rutter-Rex responded, not with an unconditional reinstatement of these employees, but with the suggestion that:

"Such persons as desire to return to work with us file application with our Personnel Office as soon as possible. Since we cannot process all applications at one time, we would suggest that you have the applicants come in at the rate of no more than twenty (20) per day."

On April 22, the Union notified the Company that although they had complied with the request to send the employees in groups of twenty per day, "We consider these employees as having unconditionally applied for employment on the date you received our registered letters along with lists of names attached thereto". With this letter an additional list of fifteen names was submitted.

On May 13, six additional names were sent.

■■ We hold that the Union letters as to the named employees was effective notice and that the Company should have promptly reinstated them, N.L.R.B. v. Brown & Root, Inc., 8 Cir., 1953, 203 F.2d 139, 147.

The Company argues that literal compliance with the order to reinstate all employees within five days after they applied was impossible and that a good faith effort was made to reinstate as many as possible as quickly as possible. The Union submitted the names of 114 employees on April 5. By the standards which the Company sought to impose, 20 a day, these could have been taken care of in less than six full days. The list of 25 submitted on April 8 would have required only two hours beyond one day. The 15 submitted on April 22 would have required less than a day. The 6 submitted on May 13 would have required less than half a day. So, we reject this argument.

■ Moreover, the requirement is that the employee be made whole. The liability for backpay therefore begins with the application for reinstatement, even if that be a date prior to the Board Order. Unfair labor practice strikers must be rehired on demand, N.L.R.B. v. Fitzgerald Mills Corp., 2 Cir., 1963, 313 F.2d 260. The clear policy of the Act is to restore the situation as nearly as possible to that which would have been obtained but for the unfair labor practices, Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271 to make whole those who have been deprived of a recognized interest by acts that constitute a violation of the Act, and to prevent the violator from benefiting by his misdeed. N.L.R.B. v. Coats & Clark, Inc., 5 Cir., 1957, 241 F.2d 556; N.L.R.B. v. J. H. Rutter-Rex Manufacturing Co., 5 Cir., 1957, 245 F.2d 594. See, also, Florence Printing Company v. N.L.R.B., 4 Cir., 1967, 376 F.2d 216, cert. denied 389 U.S. 840, 88 S.Ct. 68, 19 L. Ed.2d 104.

We find the record well sprinkled with instances in which the Company moved at a snail's pace in the reinstatement of some of these former employees. The record as a whole demonstrates that it was not impossible for the Company to comply and that as to many individuals it did not comply. Our conclusion as to the individual employee cases will be found in Part V of this opinion.

## C. INORDINATE DELAY.

The Company strongly urges, with much factual justification, that the Backpay Specifications ought to be barred by the four year delay on the part of the Board. As already pointed out, however, the Company cannot invoke laches or statutes of limitation, but this is not the end of the matter.

On November 7, 1957, following our decree granting enforcement (August 31, 1957) *counsel for the Company* wrote the Board as follows:

"As you know, we are handling the matter of complying with the decree of the United States Court of Appeals for the Fifth Circuit, enforcing the order of the National Labor Relations Board in the subject cases. Our client has already complied with some of the provisions of the decree, and is presently engaged in bargaining with the representatives of the Amalgamated Clothing Workers of America. If any instance of a failure to fully comply with the order is brought to your attention, we would appreciate your contacting us promptly so that such corrective measures as may be necessary can be immediately taken in order to assure full compliance with the decree."

The Board minimizes the importance of this communication by citing its letter *to the Company,* dated August 21, 1957:

"You have recently received the Decree of the Fifth Circuit Court of Appeals in the above case.

"I should like to offer the assistance of this office in effecting prompt compliance with the requirements of this Decree. William W. Fox has been assigned to assist you in this connection.

"Kindly advise Mr. Fox how many copies of the Notice you will need in order to comply with the terms of the Decree and he will have the required number prepared for you.

"I trust that within the time specified in the Decree we will be able to report to the Board that you have taken the required action.

*"When you have fully complied with the affirmative terms of the Decree and there are no violations of its negative provisions, you will be notified that the case has been closed. Until you receive such notice you will know that the case remains open for all purposes as awaiting compliance."* [Emphasis added].

After this exchange of correspondence nothing of any consequence was said or done until March 22, 1960. On that date, a compliance examiner wrote Company counsel as follows:

"As you may know, the above-named cases have been assigned to the undersigned for the purpose of assisting the Company in complying with the Order of the Board as enforced by the Circuit Court.

"Our file indicates our last correspondence with you was in 1957, when in a September 11 letter you informed us notices were posted in the New Orleans plants of Rutter-Rex on September 10. It is presumed that notices were subsequently posted at the Franklinton plant. Will you please confirm the posting of these notices.

"An effort is being made to determine the back pay, if any, due the strikers referred to by the Board in its Order. To this end we are requesting that payroll records, social security payment records, personnel records and reports necessary to analyze the amounts of back pay due and the rights of employment of strikers be made available to us for examination and copying. We currently have before us the names of some 470 individuals for whom determinations are to be made. While this appears to be a formidable undertaking, we trust that with your cooperation it will not be too burdensome upon the Employer.

"Will you please contact us at your earliest convenience in order that we may arrange a time and place for our examination.

"We are, we realize, in the position of having delayed action in this matter over a period of several years. Under these circumstances, it may seem inconsistent that we now urge that prompt attention be given to the request. However, the delay to date has been in a large measure due to a shortage of personnel in this office. In order that we may bring your client into compliance with the decree of the Court as soon as possible, we ask that we hear from you within the next week. Your cooperation here will be sincerely appreciated."

It was this examination of Company records, opened in 1960 and completed in 1961, which led to the Backpay Specification of November 4, 1961, now contested before this Court.

 We agree that the Company could not shift or avoid its duty of compliance by asking the Board to notify it of any failures of compliance which might be brought to its attention.

On the other hand, the Company had a legal right to expect the Board to proceed with *reasonable expedition*. The Administrative Procedure Act, 5 U.S.C. A. § 1005(a), Deering Milliken, Inc. v. Johnston, 4 Cir., 1961, 295 F.2d 856. The language of the statute then read that "* * * every agency shall proceed with reasonable dispatch to conclude any matter presented to it except that due regard shall be had for the convenience and necessity of the parties or their representatives. * * *".

The Board says that the Company is not now entitled to the benefit of the statute because it made no effort to invoke it. The answer to this is that, despite its duty expeditiously to proceed, from August 31, 1957 until March 22, 1960 the Board wrote no letter and gave no notice of any kind that it contemplated moving with reference to backpay. We have already pointed out that a prior panel of this Court found the delay to have been inordinate, beyond the bounds of reason. That panel had before it the Board excuse that it had an extremely heavy case load. We are impressed by the fact that regardless of its case load

in the New Orleans area the Board knew that the Rutter-Rex dispute initially involved 600 employees and undoubtedly was one of the most important, if not the most important, compliance case pending before its Regional Office. It is admitted that the Board did have six attorneys at New Orleans. Yet, all of their attention was devoted to other cases, to the complete exclusion of this one. They let the case slide along in total inaction for almost three years after we granted enforcement—and for five years after the Union abandoned the strike. Moreover, backpay was awarded through June 30, 1961, and any accruing since that date is *yet to be settled*.

In Deering Milliken, Inc. v. Johnston, supra, it was held that the courts have the right and the duty to enforce the requirements of the Administrative Procedure Act:

"What is required is some balance between the interest of the Board, of the Union, and of the employer. It should be recognized, on the one hand, that the court should not interfere with any reasonable exercise of the Board's discretion in controlling the progress of the proceedings pending before it. On the other hand, adequate protection of the employer's rights should be afforded."

The fact that the Company applied for no relief until it received the notice of March 22, 1960 is not conclusive because it had a right to expect the Board to proceed with reasonable expedition and the Board did not do so. At the very least, in a fair and impartial analysis of the situation, it cannot be said that the Company was not, at least to a reasonable degree, lulled into the belief that the Board was satisfied and that no further action was to be expected.

Although we have held that mere lapse of time will not throttle the filing of backpay specifications, we also recognize the rule found in N.L.R.B. v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839:

"Courts are expressly empowered to enforce, modify or set aside, in whole

or in part, the Board's orders, except that the findings of the Board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. National Labor Relations Act, as amended, §§ 10(e), (f), 29 U.S.C. §§ 160(e), (f) (1958 ed.). Courts should be 'slow to overturn an administrative decision,' National Labor Relations Board v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 100 L.Ed. 975, but they are not left 'to sheer acceptance of the Board's conclusions,' Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 803, 65 S.Ct. 982, 89 L.Ed. 1372. Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. Of course due deference is to be rendered to agency determinations of fact, so long as there is substantial evidence to be found in the record as a whole. But where, as here, the review is not of a question of fact, but of a judgment as to the proper balance to be struck between conflicting interests, '[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' American Ship Building Co. v. National Labor Relations Board, 380 U.S. [300] at 318, 85 S.Ct. [955] at 967 [13 L.Ed.2d 855]."

See, for example, the decision of the Court of Appeals for the Eighth Circuit in N.L.R.B. v. Ozark Hardwood Co., 282 F.2d 1 (1960), in which that court declined to enforce backpay awards that were within the letter of the law but apparently beyond the intent of Congress.

In the light of these considerations, we proceed to a determination of a "balance between the interest of the Board, of the Union, and of the employer", Deering Milliken, Inc. v. Johnston, supra.

■ A backpay proceeding is designed to enforce a public, not a private right. The purpose of a backpay award is to deter unfair labor practices and not to enforce the private rights of the employees, N.L.R.B. v. Mooney Aircraft, Inc., 5 Cir., 1966, 366 F.2d 809.

■ Because the Company had committed unfair labor practices the burden was upon it to establish all affirmative defenses to the backpay specification. The Board's sole burden was to prove damages, but as to any facts in mitigation the burden was on the employer, N.L.R.B. v. Miami Coca-Cola Bottling Company, 5 Cir., 1966, 360 F.2d 569, 576. When dealing with 200 claims, carrying the burden of proof as to when an employee applied for reinstatement, whether the applicant was really available for work, whether there was a job available, whether a replacement should have been discharged in order to reinstate a striker, whether a discharge after reinstatement was made in good faith, whether an employee had made a bona fide effort to obtain employment elsewhere, is at best no minor task. After inordinate delay, the situation is compounded. Actually about all the Company could do in this hearing, which ran 58 trial days, was to cross examine the claimants in an effort to establish much of its defenses.

The proof was often so sketchy that the Trial Examiner had to strain for his findings. Repeatedly, issues were resolved solely by applying the rule as to the burden of proof. Ordinarily, we would not take a second look at this, but after inordinate delay there is occasion for concern. We do not feel that the inordinate delay barred all backpay, but some modification must be made.

■ Under the facts and circumstances of this case as herein enumerated, and applying the principles herein considered, this Court holds that the purposes of the Act will be vindicated, the intent of Congress will be served, and the Due Process rights of this Company will be preserved, by the enforcement of the Supplemental Order of the Board as to all backpay awarded to all employees (except those named in Part V) for any and all quarterly pay periods prior to and expiring with the end of the second quarter of the year 1959. This period covers all backpay accruing during the three years which transpired between the end of the strike and our decree of enforcement, 245 F.2d 594, and it includes all such backpay for a period of an additional two years subsequent to that decree. Considering that the employer was in the wrong in 1955 and that the Board was guilty of inordinate delay by doing nothing before March 22, 1960, we are of the opinion that backpay awards for this five year period satisfy the purposes of the law, with no injustice to the Company. We are likewise convinced that no backpay award for any period subsequent to July 1, 1959 should now or hereafter be enforced.

## V
### THE INDIVIDUAL CLAIMS

The bulk of the record and briefs deals with the merits or demerits of almost 200 individuals claims for backpay. Upon consideration, judged by the standards applicable to each case, we find substantial support in the record for all awards except those to Amanda Bickham, Ruth Brumfield, Hazel Burns, Gloria Delpit, Vera Fulton, Indiana Plummer Gamble, Ida Haynes, Catherine Jeff (Clark), Kathleen Lodge, and Hattie Walker. Awards to these individuals will not be enforced.

### CONCLUSION

Except as those employees who are found in Part V hereof to be entitled to no backpay at all, all backpay awards for any employment period prior to and ending with the close of the second quarter of the year 1959, as granted in the Supplemental Order of the Board dated June 3, 1966, are hereby enforced.

In like manner, as to all backpay awards for any period of employment from and after the beginning of the third quarter of the year 1959 enforcement is denied.

The case is remanded to the Board for the purely mathematical task of computing the amount of backpay due each employee, consistently with what we herein hold and have hereby ordered. Since this is a matter of mathematical calculation only, no likely reason for any of the parties to seek further review in this Court is anticipated.

After thirteen years, let the books be closed on this controversy.

Enforcement granted in part and in part denied, and remanded with directions.