ALBA–WALDENSIAN, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

INTERNATIONAL LADIES' GARMENT
WORKERS UNION, AFL–CIO,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Alba-Waldensian, Inc., Intervenor.

Nos. 11821, 12000.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1968.

Decided Dec. 3, 1968.

J. W. Alexander, Jr., Charlotte, N. C.
(Young M. Smith, Hickory, N. C., and
Blakeney, Alexander & Machen, Char-
lotte, N. C., on brief) for Alba-Walden-
sian, Inc.

Jerry D. Anker, Washington, D. C.
(Cole & Groner, Washington, D. C., Mor-
ris Glushien and Max Zimny, New York
City, on brief) for International Ladies'
Garment Workers Union, AFL–CIO.

John D. Burgoyne, Atty., NLRB (Ar-
nold Ordman, Gen. Counsel, Dominick L.
Manoli, Associate Gen. Counsel, Marcel
Mallet-Prevost, Asst. Gen. Counsel, and
Nancy M. Sherman, Atty., NLRB, on
brief) for respondent.

Before BOREMAN, BRYAN and
BUTZNER, Circuit Judges.

PER CURIAM:

Under the National Labor Relations
Act, as amended, 29 U.S.C. 151 et seq.,
the Board found that the Pons-Outer-
wear Division of Alba-Waldensian, Inc.
violated Section 8(a) (5) of the Act,
29 U.S.C. 158(a) (5), by failing and re-
fusing to bargain in good faith with the
International Ladies' Garment Workers
Union, AFL–CIO, the representative of
Pons' employees. 167 NLRB No. 101
(1967). The company now seeks vaca-
tion, and the union and the Board en-
forcement, of the order effectuating
these findings. The derelictions were
put at the company's plant in Valdese,
North Carolina, where it manufactured
women's outer clothing. We decline to
disturb the order.

On March 25, 1965 Pons' workers
struck under the guidance of the union,
protesting a proposed reduction of wages
and seeking recognition for the union.

Immediate acknowledgment was not won, but following a consent Board election, the union was duly certified on May 25, 1965. Commencing May 28 and continuing into February or March 1966, the company and International conferred frequently. The meetings were suspended, however, on June 24, 1965 by the union's withdrawal. It complained that the employer was not negotiating in good faith to a contract embracing union demands.

The particular demand then in contest was for the production of the employer's payrolls, piece-work rates and data showing the method of their computation. Company responses, the union charged, were not adequate; the company insisted that the call had been satisfied. In its final decision the Board upheld the union's contention. The refusal to produce further was adjudged a refusal to bargain in good faith, and hence an unfair labor practice. The Board concluded also that the strike had at that point terminated as an economic strike. On July 13, 1965 discussions were resumed on other requisitions of the union, such as check-off of dues, increase of wages and paid holidays, arbitration of disputes and a no-strike covenant. No agreement was then or thereafter achieved.

Assessing the company's approach to and disposition of the union demands since June 24, 1965, and throughout the subsequent meetings until the employees' offer in February 1966 to return to work, the Board declared the company's conduct manifested an absence of good faith. This attitude, said the Board, created an unwarranted prolongation of the strike, continuing it as an unfair labor practice strike after June 24, 1965. This finding meant, of course, that the strikers were entitled to reinstatement to the positions they occupied and the benefits they enjoyed on that date. NLRB v. Crosby Chemicals, Inc., 188 F.2d 91, 95 (5 Cir. 1951); NLRB v. Remington Rand, Inc., 130 F.2d 919, 928 (2 Cir. 1942).

On word of the strikers' desire to rejoin Pons, it treated with them, the Board found, directly rather than through the union to effect their reinstatement. It also determined that some of them had not been completely put back in the same or equivalent positions with like privileges they held as of June 24, 1965. These failures were adjudged unfair labor practices, because in violation of §§ 8(a) (1), (3) of the Act, 29 U.S.C. 158(a) (1), (3). Other instances pressed by its General Counsel and the union as of this nature, the Board declined to censure.

The Board's order directed the company to desist from further transgressions of the Act, but as Pons ceased operations in January 1968 this part of the relief is now of no importance. Still alive, however, is the additional mandate that the employees be made whole for any loss they experienced by reason of any discrimination in their reemployment.

Of course, the determinative question in this case is whether the bargaining on the part of the employer, although physically constant, was carried on in good faith for the consummation of a contract. That is the contemplation of the Act. Obviously, good faith is an intangible factor—a state of mind—provable only by inference or implication from the behavior of the treating parties. Initially such derivations are in the exclusive province of the Board. Afterwards we can canvass the proceeding only to ascertain if there was a substantial evidentiary basis for these conclusions. Here we cannot say they did not have the requisite sustainment.

It follows that the Board's order must be performed. The strikers must be indemnified for any pecuniary loss they suffered, after their offer to return, through discrimination by the company in readmitting them.

Order enforced.