NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AMERICAN STEEL BUILDING COMPANY, Inc., Respondent.

No. 18108.

United States Court of Appeals Fifth Circuit.

June 3, 1960.

Rehearing Denied July 1, 1960.

Richard J. Scupi, Atty., Thomas J. Mc-Dermott, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Pollack, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Carlton Wilde, Fentress Bracewell, Houston, Tex., Bracewell, Reynolds & Patterson, Houston, Tex., of counsel, for respondent.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

PER CURIAM.

The Board seeks enforcement of its order, 123 NLRB 166, growing out of the discharge of fifteen night shift employees.

We find ample evidence in the record to support the findings that the night shift was fired because they engaged in concerted union activity. No purpose will be served in recounting the facts—which hinged on credibility—as to whether the employees were fired for union activity, as charged and found, or for inefficiency, as the Employer contends. N.L.R.B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88. Neither need we explore whether the circumstances just vaguely disclosed in this record concerning the demand for an unsigned statement given to a field examiner technically violated the Jencks concept (Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103) as followed by the Board, Ra-Rich Mfg. Corp., 1958, 121 NLRB 700, because on this record we are convinced that nonproduction could not have been prejudicial.

The only real question involves the remedy which directs the Employer to offer discharged employees "reinstatement to their former or substantially equivalent positions" and reimburse them for any loss of earnings due to the discrimination against them.[1] The Em-

---

1. The Examiner's Intermediate Report in a section entitled "The remedy" prescribes the manner, which the Board expressly adopts, in which reinstatement is to be effected. We set forth that pertinent part of the Examiner's report.

"Having found that [the Employer] * * * discriminatorily discharged the 15 employees * * * I recommend that [the Employer] be ordered to offer each of them immediate and full reinstatement to his former or substantially equivalent position, without prejudice to his seniority and other rights and privileges. In the event that there is insufficient work for all those employees on any night shift presently or next hereafter engaged by Respondent, the latter shall be directed to dismiss, if necessary, all persons newly hired after October 4, 1958 [the date of the unlawful discharge]. If there is not then sufficient work available for the remaining employees and those to be offered reinstatement, all available jobs shall be distributed among them without discrimination against any employee because of union membership or activity, in accordance with the system of seniority or other nondiscriminatory practices heretofore applied in the course of [Employer's] business. Any of these employees for whom no employment is available after such distribution shall be placed on a preferential hiring list, with priority in accordance with such system of seniority or other nondiscriminatory practice heretofore applied in the conduct of [Employer's] business, and thereafter offer reinstatement as such employment becomes available and before other persons are hired for such work. If, in compliance proceedings, it should be ascertained that [Employer] has in the past given preference in employment on its day shift to employees formerly engaged on the night shift, it is further recommended that [Employer] be directed to extend such preference to the [discharged] employees.

"I also recommended that [Employer]

ployer contends that the order fails to take into consideration the temporary nature of the night shift work and that it operates to grant advantages and preferences which the discharged night shift employees would not have otherwise had.

As we read it, the order does not—and under our construction cannot—have such a result. The purpose of the order is solely to place the employees in the identical position they would have been in but for the discrimination. At times, when required by the necessities of business the Employer hires employees for a night shift. The order requires reinstatement of the discharged employees to their former positions on the "night shift presently or next thereafter engaged" in accordance with the Employer's usual practices. Those employees for whom work is not immediately available are to be placed on a preferential hiring list for future opening for night shift work. This may require discharge of night shift workers hired subsequent to the unlawful discharge. Thus the order does not purport to do more than restore the dischargees to their former rights with regard to nighttime work. Nor does it do more than restore each of them to his former position with regard to daytime work. The Board did not undertake to determine what those rights are. It merely declared that if, in subsequent compliance proceedings, it is determined in fact that the Employer previously gave preference to current or former night shift employees in the hiring of its day shift, then in accordance with such usual practice the Employer must give such a preference to these dischargees. Thus, the order does not—and cannot—require the Employer to set up night shifts he would not have ordinarily used or to hire additional men he would not have ordinarily hired or to give pref-

erences to the discharged employees he would not have ordinarily extended. The sole effect—which we wish to make perfectly clear—is merely to place the discharged employees in the same position —with no more advantages and no fewer advantages—that they were in before the discrimination against them for union activity. Stated in such terms it is apparent that resolution of the Employer's usual employment practices as well as any disputed details regarding the reinstatement of individual employees must be left to appropriate supplemental administrative proceedings in which the parties have a full right to be heard and from which there will be ample judicial review. N.L.R.B. v. J. H. Rutter-Rex Mfg. Co., 5 Cir., 1957, 245 F.2d 594, 598.

Order enforced.

make whole each of the employees * * for any loss of earnings he may have suffered because of the discrimination against him, by payment of a sum of money equal to the amount he normally would have earned as wages from the date of his discharge to the date of the offer of reinstatement, less his net earnings during said period, with back pay computed on a quarterly basis in the manner established by the Board in F. W. Woolworth, 90 N.L.R.B. 289, 291-294. * * * " Trial Examiner's Intermediate Report.