NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BISCAYNE TELEVISION CORPORA-TION, Respondent.

No. 18452.

United States Court of Appeals Fifth Circuit.

April 21, 1961.

Melvin Pollack, Atty., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, N.L.R.B., Washington, D. C., Stuart Rothman, Gen. Counsel, Judith Bleich Kahn, Washington, D. C., Attys., for National Labor Relations Board.

Jerry B. Crockett, Scott, McCarthy, Preston, Steel & Gilleland, Miami, Fla., for respondent.

Before JONES and BROWN, Circuit Judges, and CONNALLY, District Judge.

PER CURIAM.

The Board in its order found the Employer, the operator of a TV station, guilty of § 8(a) (1) interference in the exercise of rights of the employees. It also found that the employees Marlin, Filer and Lipari were discharged, and Weand demoted on August 12, 1958, for union activity contrary to § 8(a) (3). Considering that the conclusions were reached on controverted evidence warranting the Board making a choice between conflicting inferences, the Employer does not directly attack these conclusions. The Employer does object to that part of the order referred to as the remedy. The Board's decision, contrary to that of the Examiner, recognizes that the Employer may have substantially altered its operations subsequent to the date of this discriminatory discharge-demotion occurrence, "so that it no longer requires the same number of employees in its news department as it did prior to the discharges * * *." That, and the absence of any indication thus far that replacements were hired, led the Board to state: "It is therefore possible that some of these employees might have been affected in such a curtailment of operations, absent the Respondent's unfair labor practices." Consequently, the Board acknowledges that reinstatment and consequent reimbursement of back pay of the discriminatees cannot be forced on the Employer if the job of these persons has been abolished by reduction in forces.

But to effectuate this the Board does it in a roundabout way. If first imposed the order requiring reinstatement with an award of back pay. But it provided further in effect that the Employer was free to establish that, by virtue of these economic nondiscriminatory reasons, the job of such discriminatee was, or has become, no longer available. In such event the reinstatement (and back pay) would cease as of such moment.

We think this is artificial. It is fraught with much uncertainty which will provoke more controversy, not less. What, and all, these employees are en-

titled to is the right each would have enjoyed under employment policies and practices customarily followed by this Employer had they not been discriminatorily discharged or demoted. Neither the status as a victim of discrimination nor union membership affords any added rights of any kind. The discriminatee is neither better, nor worse, off. If under the Employer's established employment practices, a discriminatee, at the time of the layoff, had a right to displace another person in the same job, or in some other job, or had a right to priority in filling vacancies or new positions occurring subsequently in such job or some other jobs or had any other such priorities, then the Employer must offer reinstatement (and back wages) in such jobs for such times as such employment practices would accord. The obverse is equally plain. Under the Act, discrimination by the Employer does not compel it to make work for these persons. Such discrimination does not require the Employer to discharge or lay off others to provide jobs for these discriminatees. Nor does it compel the Employer to give a priority right in rehiring as old jobs become vacant or new positions are created. What the Act does in this situation is twofold: first, it prohibits altogether anti-union discrimination; second, it requires the Employer to accord to these persons whatever rights, privileges and priorities—but no more— they would have had under the nondiscriminatory employment customs, practices and policies followed and applied by this particular Employer in the exercise of its management prerogatives. N. L. R. B. v. American Steel Building Co., 5 Cir., 1960, 278 F.2d 480.

■ It is obvious from the Board's decision and what we have briefly stated that further proceedings before the Board are essential. It could be most unfair to leave some or all of these contingent uncertainties to coercive compliance proceedings where mistaken action runs the risk of contempt. The further proceedings will determine whether these · economic management changes have been made, and if so, with respect to each discriminatee the right, if any, to reinstatement, back wages and related problems in accordance with the principles here announced. Consequently, while thus modified, we approve the order and in effect enforce it, the matter is remanded for further proceedings.

*Modified and remanded.*