NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TRINITY VALLEY IRON AND STEEL COMPANY, a Division of C. C. Griffin Manufacturing Company, Inc., Respondent.

No. 18553.

United States Court of Appeals
Fifth Circuit.

May 2, 1961.

Melvin Pollack, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel,

Stuart Rothman, Gen. Counsel, Peter M. Giesey, Atty., N.L.R.B., Washington, D. C., for petitioner.

John Edward Price, Brown, Herman, Scott & Young, Fort Worth, Tex., for respondent.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

On June 8 the Employees commenced an economic strike. On June 30, from conduct occurring then and prior to that time, it became an unfair labor practice strike. The Examiner held hearings on the unfair labor charges during November. Prior to the filing of the Examiner's Intermediate Report, the strike terminated in December. It was not until the following January that the Examiner filed his Intermediate Report, which was affirmed by the Board in April. The Employer no longer attacks the Board's finding that the strike became an unfair labor practice strike on June 30. Nor does it challenge the requirement that Employees on strike on June 30 be afforded reinstatement. The attack is narrowed to the provision in the Order that back pay shall be awarded for the period commencing five days after application for reinstatement and continuing until the date on which the Employer offers reinstatement.[1]

More specifically the Employer claims the Order and this provision are punitive because the five-day period is unreasonably short and does not take into account the practical problems and difficulties inherent in the re-employment, medical examination and preliminary job-training of such a large body of men. Neither the Order nor the five-day provision are, in our view, punitive as claimed by the Employer. The duty of reinstatement, the practical problems growing out of replacement of employees hired during the strike, and any confusion or plant inefficiencies related to the assimilation of a large number of former employees after a somewhat extended absence due to the strike are all a foreseeable "direct by-product" of the employer's violation of the Act (29 U.S.C.A. § 151 et seq.). N. L. R. B. v. J. H. Rutter-Rex Manufacturing Co., 5 Cir., 1957, 245 F.2d 594, 598.

Of course, as we have many times held, the enforcement of the Board's Order by us at this time does not foreclose the opportunity of establishing facts which have occurred subsequent to the hearing on the unfair labor practice charges or subsequent to the Board's Order bearing upon compliance with the Order of reinstatement. Appropriate supplemental proceedings are available. N. L. R. B. v. J. H. Rutter-Rex Manufacturing Co., supra, at page 598; N. L. R. B. v. American Steel Building Co., 5 Cir., 1960, 278 F.2d 480, 482; cf. N. L. R. B. v. Biscayne Television Corporation, 5 Cir., 1961, 289 F.2d 338.

Order enforced.

1. The order in the traditional form provided that the Employer should:

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

   *    *    *    *    *

"(b) Upon application, offer immediate and full reinstatement to their former or substantially equivalent positions, without prejudice to their seniority or other rights and privileges, to all those employees who were on strike on and after June 30, 1959, and who have not already been reinstated to their former or substantially equivalent positions, without prejudice to their seniority or other rights and privileges, dismissing if necessary any persons hired by the Respondent on or after June 30, 1959, who were not in the Respondent's employ on that date.

"(c) Make whole the employees specified in paragraph 2(b) above, for any loss of pay they may suffer by reason of the Respondent's refusal, if any, to reinstate them in the manner provided in paragraph 2(b) above, by payment to each of them a sum of money equal to that which he normally would have earned as wages during the period from five (5) days after the date on which he applies for reinstatement to the date of the Respondent's offer of reinstatement, less his net earnings if any during said period; * * *."