NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JACOB E. DECKER AND SONS,
Respondent.

No. 76–3181.

United States Court of Appeals,
Fifth Circuit.

March 13, 1978.

Elliott Moore, Deputy Assoc. Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, Michael S. Winer, Michael F. Messitte, Attys., NLRB, Washington, D. C., for petitioner.

Leon C. Reivitz, Phoenix, Ariz., A. J. Harper, II, Houston, Tex., for respondent.

Before THORNBERRY, GOLDBERG, and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The NLRB has applied for enforcement of its order that Decker cease certain unfair labor practices, offer reinstatement to two employees, and pay two other employees the wages they lost while suspended.[1] *See* Jacob E. Decker and Sons, 223 N.L.R.B. 70 (1976). With one exception Decker concedes that there was substantial evidence to support the Board's findings that Decker had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act. 29 U.S.C. §§ 158(a)(1), (3). The exception involves two employees who were suspended for thirty days because, according to Decker, they failed to correct misstatements on their company records. In addition to that evidentiary challenge, Decker contends that the Board committed two procedural errors that preclude enforcement of the Board's order. Both procedural errors involve the felony convictions of two other employees who testified on behalf of the Board at the hearing before

---

1. The ALJ considered the union's objections to an election as well as the unfair labor practices. The Board's order that a second election be held is not involved in this petition because it is not an appealable order. *Hendrix Manufacturing Company v. NLRB*, 321 F.2d 100, 106 (5th Cir. 1963).

an Administrative Law Judge (ALJ). The first error concerns the effect of a conviction on a witness' credibility. Decker contends that the Board should have remanded the case to the ALJ so that he could reassess the credibility of the witnesses in the light of their convictions. The second error involves the effect of a conviction on an employee's eligibility for reinstatement. Decker contends that the Board should have reopened the record to allow the evidence of the felony convictions to be included in Decker's challenge to the ALJ's order that the employees be offered reinstatement. For the reasons stated below, we enforce all of the Board's order except for the portion dealing with the two discharged employees who were later convicted of felonies.

Since Decker has not contested the Board's general findings, we need only relate the background of this case in summary fashion. Early in June 1974 the Union, Local 171 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, began an attempt to organize the employees at Decker's meat processing plant in San Antonio, Texas. At a meeting on June 20, seven employees discussed the campaign with union organizers. One of those employees was Alfredo Orosco. Orosco signed a union card at that meeting and later began soliciting other employees to sign cards. On June 28 Orosco was discharged. During the next few days the company held three meetings to explain that Orosco had been discharged because he had failed to list a former employer on his application for employment. Three weeks later, two other employees, Raymond Tarin and Jesse Garcia, were suspended for thirty days because, according to the company, they had concealed that they were brothers-in-law. The final action by the company that concerns this court occurred on September 6, when John A. Dominguez was discharged from his position on the mainte-

nance clean-up crew. The company explained that Dominguez, a probationary employee, had been fired because his performance was unsatisfactory.

■ Because the company has not challenged the Board's findings of a violation of section 8(a)(1), the Board is entitled to an order enforcing its directive that the company post the appropriate notices. *See Montgomery Ward & Company v. NLRB*, 385 F.2d 760, 765 (8th Cir. 1967).

The company contends that there was insufficient evidence to support the Board's conclusion that Tarin and Garcia were suspended because of their union activities. The company finds support for its contention in the ALJ's statement that Tarin and Garcia "were *bona fide* candidates for suspension" because they had falsified company records. Both Tarin and Garcia had indicated on company forms that they had no relative working for the company even though they were brothers-in-law.[2] In spite of his statement, the ALJ concluded, and the Board agreed that the suspension was motivated by an anti-union animus. Our review of that conclusion is limited to assessing whether there is substantial evidence in the record as a whole to support the Board's finding. "When the findings and conclusions of the Board are supported by the record as a whole, the court will not substitute its judgment for that of the agency." *Linbeck Construction Corporation v. NLRB*, 550 F.2d 311, 320 (5th Cir. 1977).

■ The company contends that the Board erred in finding the suspension was motivated by anti-union animus. It points out that in the meetings held after Orosco's discharge it announced an "open" period during which employees could correct their records without being penalized for the initial falsification, and urges that since Tarin and Garcia did not take advantage of that

---

**2.** The falsification of records occurred in 1969 when Tarin applied to Decker for employment. On his application form he indicated that he had no relatives working for Decker and he listed Garcia as a reference. Garcia, who was

working for Decker at the time, was Tarin's brother-in-law. On the recommendation form sent to him by the company Garcia stated that he was not related to Tarin.

open period, they were suspended. However, there was a conflict in the testimony as to when the company first announced the open period; some said it was in the meetings to explain Orosco's firing, others said it came only after Tarin's and Garcia's suspension. The ALJ concluded that neither Tarin nor Garcia was notified of the open period prior to their suspension. Since there is testimony upon which the ALJ could base his conclusion, we will not disturb it even though there is also testimony to support the contrary conclusion. *Sturgis Newport Business Forms, Inc. v. NLRB*, 563 F.2d 1252, 1256 (5th Cir. 1977); *Helena Laboratories Corporation v. NLRB*, 557 F.2d 1183, 1187 (5th Cir. 1977); *NLRB v. Standard Forge & Axle Company*, 420 F.2d 508, 510 (5th Cir. 1969), *cert. denied*, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140 (1970). The only objective evidence supports the ALJ's conclusion. Those corrections that were made were dated after the suspension of Tarin and Garcia. There was also evidence that the company knew of at least one other pair of relatives who had not disclosed their relationship, yet the company had taken no action against them. Thus the ALJ had evidence upon which he could fairly conclude that the company had discriminated against Tarin and Garcia. In addition, there was evidence upon which the ALJ could have concluded that the discrimination was based upon anti-union animus. The plant manager knew that Tarin was actively involved in the campaign to organize the union and, three weeks before the suspension, had asked Tarin about his activities. That knowledge, coupled with the fact that the suspension came during the company's efforts to defeat the union's organizing campaign, could support the conclusion that the suspension was based upon union activities. *NLRB v. Varo, Inc.*, 425 F.2d 293, 301–02 (5th Cir. 1970). As we held in *NLRB v. Central Power & Light Company*, 425 F.2d 1318, 1322 (5th Cir. 1970), "the existence of cause is not a defense to a discharge actually motivated by anti-union purposes. . . . The cases also clearly indicate that open hostility by the employer to the union and discharge of an employee shortly after the employer learns of his union activity may give rise to an inference that the discharge was discriminatory."

Decker's contentions concerning Orosco and Dominguez do not directly challenge the Board's finding that they were discharged because of their activity on behalf of the union. Instead, Decker argues that because both Orosco and Dominguez have been convicted of felonies, their credibility is in doubt. Decker petitioned the Board to remand the case to the ALJ so that he could reconsider his evaluation of the credibility of the two men. If the ALJ found them not to be credible, then, Decker reasons, there would be insufficient evidence to support the finding that their discharges were unfair labor practices and less evidence to support the finding that the company had violated section 8(a)(3). Decker also relies upon the felony convictions to challenge the Board's order that Orosco and Dominguez be offered reinstatement. Decker asked the Board to reopen the record to admit evidence of the convictions. The Board refused, postponing until the compliance stage a decision on Dominguez' and Orosco's suitability for reinstatement.

The following calendar of events is important in considering both of Decker's arguments:

| February 11–13, 1975: | Partial hearing on the unfair labor charges. |
|---|---|
| February 19: | Dominguez pled guilty to federal charges that he had used the telephone to facilitate the distribution of LSD, a felony under 21 U.S.C. §§ 841(a)(1), 843(b). |
| March 3–6: | Hearing resumed and concluded. |
| May 2: | Dominguez adjudged guilty and sentenced. |
| June 26: | ALJ decision issued. |
| July 16: | Decker petitioned Board to reopen the record to admit Dominguez' conviction insofar as it related to his credibility. |

| | |
|---|---|
| February 26, 1976: | Orosco pled guilty to state charges of possession of more than four ounces of marijuana, a felony in Texas. |
| March 15: | Board decision issued denying Decker's petition to reopen the record to consider Dominguez' conviction.[3] |
| March 25: | Judgment against Orosco entered. |
| April 7: | Decker petitioned Board to reopen the record to consider the effect of both convictions on credibility as well as on reinstatement. |
| May 28: | Board denied petition, saying that it would defer until the compliance stage consideration of reinstatement. |

This chronology reveals that Dominguez' conviction became final after the hearing but before the ALJ issued his decision; Orosco's conviction did not become final until after the Board issued its decision.

■ The Board is required to conduct its proceedings, "so far as practicable," in accord with the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

3. The Board explained its denial of Decker's petition in footnote 2 of its order, 223 N.L.R.B. 70 (1976):

The Respondent filed a motion to reopen the record on the basis that a witness credited by the Administrative Law Judge and found to have been discriminatorily discharged by the Respondent had recently been incarcerated in a Federal penitentiary after pleading guilty to felony charges. Respondent alleges that this information came to its attention after the issuance of the Decision of the Administrative Law Judge.

At the hearing, the Administrative Law Judge initially permitted examination of the witness regarding the fact that he was under a Federal inditement [sic] for an offense (possession of a hallucinogen, which the witness forthrightly admitted) unrelated to the reasons for the discharge. However, upon the objection of the General Counsel, the Administrative Law Judge struck from the record the statements, questions, and answers regarding this indictment. We agree with the Administrative Law Judge's ruling.

29 U.S.C. § 160(b). *See also* 29 C.F.R. §§ 101.10(a), 102.39 (1976). Whether the Board may deviate from either the evidentiary or the procedural rules depends upon the extent to which the Board's proceedings are comparable to the proceedings in federal courts.

■ The company's challenge to the Board's failure to remand the case to the ALJ for him to reconsider the witnesses' credibility is based upon Rule 609 of the Federal Rules of Evidence. Rule 609(a) directs that evidence that a witness "has been convicted of a crime shall be admitted" for the purpose of attacking the credibility of the witness. In its order refusing to remand, the Board stated that it had considered the nature of the felony and had concluded that it "would not bear upon the credibility" of the witness.[4] We read the Board's opinion as resting on the proposition that the Board could exclude all convictions for any crimes other than those involving dishonesty or false statement without balancing probative value and prejudice. This is error, for Rule 609(a) makes evidence of conviction for any felony potentially admissible for purposes of impeachment.

We have considered the nature of the indictment and the alleged conviction and prison sentence resulting therefrom and conclude that such matters would not bear upon the credibility of this witness or the ultimate findings as to the unfair labor practices. It is our belief that the reopening of the record herein and the reconsideration of the credibility resolutions by the Administrative Law Judge, based on a subsequent conviction of the credited discriminatee for a matter entirely unrelated to the alleged reasons for the discharge, would lead, in the circumstances herein, to an unwarranted prolongation of the administrative process. We do not interpret rule 609(a) and (b) of the new Federal Rules of Evidence, Public Law 93–595 (revised July 1, 1975), as requiring such a procedure.

4. The Board's order denied only the petition to reopen the record to consider Dominguez' conviction. Later, however, the Board denied the petition to consider Orosco's conviction "for the same reasons set forth in its original Decision."

■ In its brief to this court the Board restated its position that Dominguez' conviction for possession of drugs "is not indicative of a propensity to lie or distort the truth."[5] This conclusion overstates the Board's ability to deviate from the Federal Rules of Evidence. In interpreting the phrase "so far as practicable," we have held that the "peculiar characteristics of administrative hearings justify certain departures from district court rules." *NLRB v. Capitol Fish Company*, 294 F.2d 868, 872 (5th Cir. 1961). In *Capitol Fish* we used the relaxation of evidentiary rules to admit hearsay evidence as an example of permissible departure. Relaxation in favor of admitting evidence does not, however, justify refusing to follow a rule requiring admission. For, as we held in *Capitol Fish*, "[n]o special characteristics of an administrative hearing justify the exclusion of evidence which it would be error to exclude in a court trial." *Id.*

■ When Congress adopted the Rules it determined that felonies, narcotics related felonies included, did bear on the credibility of witnesses. *See, e. g., United States v. Klein*, 560 F.2d 1236, 1239–41 (5th Cir. 1977); *United States v. McIntosh*, 138 U.S. App.D.C. 237, 426 F.2d 1231, 1233 (1970); *Crown Corrugated Container, Inc.*, 123 N.L.R.B. 318, 319 (1959); Advisory Committee Notes to Rule 609. The Board is therefore not free to disregard prior felony convictions. *Cf. NLRB v. West Side Carpet Cleaning Company*, 329 F.2d 758, 760 (6th Cir. 1964). Just as any trier of fact, however, the Board may decide to believe a witness even after learning of the witness' prior felony conviction. In reaching such a conclusion, the Board may consider, as it did here, the nature of the crime, the relationship of the crime to the employer or to the reason for discharge, and other factors. But the Board may not disregard the conviction altogether.

■ Our disapproval of the Board's broad reason for not reopening the record to reassess the witnesses' credibility does not require that we reject the Board's refusal to reopen. The Board's rules on reopening a record, 29 C.F.R. § 102.48(c) (1976), are analogous to Rules 59 and 60 of the Federal Rules of Civil Procedure, which also govern the Board's procedures. Under those rules the decision to reopen is left to the discretion of the Board. *NLRB v. Seafarers International Union of North America, Atlantic, Gulf, Lakes & Inland Waters District, AFL–CIO*, 496 F.2d 1363, 1365 (5th Cir. 1974); *International Brotherhood of Electrical Workers, Local 648 v. NLRB*, 440 F.2d 1184, 1185 (6th Cir. 1971). *See generally* 6A Moore's Federal Practice ¶ 59.08[3] (2d ed. 1974); 7 Moore's Federal Practice ¶ 60.23[4] (2d ed. 1975); 11 Wright & Miller, Federal Practice and Procedure, §§ 2808, 2859 (1973). A reviewing court will disturb the decision of a trial judge not to reopen a case only when there has been a clear abuse of his discretion. *Brown v. Schwartz*, 164 F.2d 151, 152 (5th Cir. 1947); *see also Lloyd v. Gill*, 406 F.2d 585, 587 (5th Cir. 1969). So, too, we will not disturb a similar decision of the Board without a like showing of an abuse of discretion. Because the Board's decision in the instant case comports with principles developed under the Federal Rules of Civil Procedure, we cannot conclude that the Board has abused its discretion.

■ Petitions to the Board to reopen a case, when based upon an allegation of newly discovered evidence, are controlled by the same considerations that control motions for a new trial or to reopen a case under Rules 59(b) and 60(b)(2) of the Federal Rules of Civil Procedure. As we held in *United States v. 41 Cases, More or Less*, 420 F.2d 1126, 1132 (5th Cir. 1970), "[n]ewly discovered evidence must be evidence in existence of which a party was excusably ignorant, discovered after trial. In addition facts implying reasonable diligence must be

---

**5.** The Board's brief also explains that it did not consider Orosco's conviction because the company did not disclose the nature of the felony conviction. That explanation is belied by a letter from Decker's counsel to the Board, which enclosed copies of the minute entries for both felony convictions. The entries described the nature of the felonies.

provided by the movant. The evidence must be material, and not cumulative or impeaching, and it must be such as to require a different result."[6] *See also Manning, Maxwell & Moore, Inc. v. NLRB,* 324 F.2d 857, 858–59 (5th Cir. 1963). The evidence adduced by Decker meets only the requirements of being material and non-cumulative.

■ That the evidence must be in existence at the time of the trial has often been stated. *E. g., Brown v. Pennsylvania Railroad Company,* 282 F.2d 522, 526–27 (3d Cir. 1960), *cert. denied,* 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961); *State of Washington v. United States,* 214 F.2d 33, 46 (9th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954); *Chemical Delinting Company v. Jackson,* 193 F.2d 123, 126–27 (5th Cir. 1951). The court in *Prostrollo v. University of South Dakota,* 63 F.R.D. 9, 11 (D.S.D.1974), restated the principle and its rationale: "There can be no Rule 60(b)(2) relief for evidence which has only come into *existence* after the trial is over, for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials. 'Newly discovered evidence' under Rule 60(b) refers to evidence of facts in existence at the time of the trial of which the aggrieved party was excusably ignorant." [Emphasis in original.] *See also State of Washington v. United States,* 214 F.2d 33, 46 (9th Cir. 1954).

■ Before deciding whether Decker's evidence was "newly discovered," we must determine which stage of the Board's proceedings is comparable to the trial in federal district court. Without considering whether it would be true in every instance, we hold that when the matter "discovered" goes to credibility of witnesses, the parallel is between the hearing before the ALJ and the trial. Because each is able to observe a witness' demeanor, the ALJ, like the trial court, is uniquely able to make credibility determinations. Reviewers of those determinations, whether they be Board members or appellate judges, can displace the evaluation of the person who actually observed the witness only in most unusual circumstances. *See NLRB v. Varo, Inc.,* 425 F.2d 293, 298 (5th Cir. 1970). Therefore, unless evidence asserted to be impeaching was available at the time of the hearing before the ALJ, it cannot later be termed "newly discovered."

■ The next question that must be resolved is the nature of the "fact" that a party seeks to introduce. Ordinarily that question would be easily answered; but here Decker seeks to challenge the credibility of two witnesses based either upon a guilty plea or upon a judgment of conviction. At the hearing, Decker attempted to introduce evidence of the indictment against Dominguez, but the ALJ properly refused to admit this proffer. Only convictions are admissible to impeach a witness.[7] *See, e. g., United States v. Turquitt,* 557 F.2d 464, 471 (5th Cir. 1977); *United States v. Hodnett,* 537 F.2d 828, 829 (5th Cir. 1976); *Brown v. Coating Specialists, Inc.,* 465 F.2d 340, 341 (5th Cir. 1972). Since neither Dominguez nor Orosco had been convicted at the time of the hearing, their later convictions could not be newly discovered evidence and the Board did not abuse its discretion in refusing to reopen the record to admit these subsequent matters.

■ The only other consideration is whether the Board should have required

---

6. The Board was confronted with a similar situation in *Manbeck Baking Company,* 130 N.L.R.B. 1186 (1961). The Board chose to deny the motion to reopen the record, saying that it did so "without passing on the substantive merits of the [company's] contention that convictions for criminal acts committed after a witness testifies at a Board hearing fall within the meaning of 'newly discovered' evidence." *Id.* at 1189.

7. Under appropriate circumstances an arrest or indictment may be introduced to show the bias of the witness. *E. g., United States v. Musgrave,* 483 F.2d 327, 338 (5th Cir.), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *United States v. Williams,* 446 F.2d 1115, 1116–17 (5th Cir. 1971). Since the company never sought to introduce these convictions for the purpose of showing bias, we have not considered whether they would have been admissible for that purpose in this case.

reopening for consideration of the fact that Dominguez had pled guilty before the hearing concluded. Whether a guilty plea is admissible for the purpose of discrediting a witness is an open question in this circuit. *United States v. Klein*, 560 F.2d 1236, 1239–41 (5th Cir. 1977). We need not resolve the admissibility of Dominguez' guilty plea in this case. Even if the plea were admissible, it need not have been admitted under the rubric of "newly discovered" evidence because Decker has failed to show due diligence in introducing such proof. That Decker knew of the charges against Dominguez is evident from the company's attempt to introduce the indictment during the hearing. Decker has offered no excuse for its failure to discover the guilty plea before the close of the hearing. Decker's failure to show diligence means that the Board did not abuse its discretion in refusing to reopen the record to consider Dominguez' conviction. *Cf. Kirby v. United States*, 297 F.2d 466, 469–70 (5th Cir. 1961).

There is yet another reason to support the Board's refusal to reopen the record: The evidence produced by Decker was merely impeaching. "It is well settled that 'newly discovered evidence, the effect of which is merely to discredit, contradict or impeach a witness, does not afford a basis for the granting of a new trial.'" *NLRB v. Sunrise Lumber & Trim Corporation*, 241 F.2d 620, 625–26 (2d Cir.), *cert. denied*, 355 U.S. 818, 78 S.Ct. 22, 2 L.Ed.2d 34 (1957) (quoting *Davis v. Yellow Cab Company of St. Petersburg, Inc.*, 220 F.2d 790, 792 (5th Cir. 1955)). We do not have the case of proof which shows that a key witness committed perjury in relating a material fact. *See Traylor v. Pickering*, 324 F.2d 655, 658 (5th Cir. 1963). Here, where the new evidence only suggests that a witness might be less credible, the interest in finality outweighs the slight possibility of injustice to a party. As one court has said, "[t]he time for testing of proof is the time of trial. Our judicial system does not contemplate that the rights of litigants shall be held in abeyance for months or years in order that hindsight may provide a more accurate appraisal of evidence." *Locklin v. Switzer Brothers, Inc.*, 299 F.2d 160, 169 (9th Cir. 1961), *cert. denied*, 369 U.S. 861, 82 S.Ct. 950, 8 L.Ed.2d 18 (1962).

The final test for evaluating whether a record should be reopened is whether the new evidence requires a different result. Here, Decker contends that because Orosco and Dominguez must be discredited, there is no evidence to support the Board's finding that their discharge was a violation of the Act. That argument assumes that the convictions required that Orosco and Dominguez be disbelieved. That is not the result of evidence of convictions. The effect is not absolute. Even if the Board had considered the convictions, it, like any trier of fact, could have chosen to believe the witnesses. Moreover, even if Orosco were disbelieved, there was sufficient other evidence upon which to conclude that his discharge was the result of his activity on behalf of the union. One employee, Guadalupe Cantu, testified that a sales supervisor told him that the company knew that Orosco was behind the campaign. That conversation occurred a week before Orosco was fired. The plant manager himself testified that he knew Orosco favored the union. The timing of the discharge, Orosco's activities on behalf of the union, and the other factors considered by the ALJ, were all supported by testimony from witnesses other than Orosco. A challenge to Orosco's credibility could not have changed the result. Neither would it have changed the finding that the company's actions violated section 8(a)(1). Testimony from other employees adequately supported the conclusion that the company had engaged in interrogation, made threats, and created an impression of surveillance.

The supporting testimony concerning Dominguez is not similarly independent of his own testimony. Rather, the ALJ relied heavily upon Dominguez, who the ALJ found to be a believable witness. We cannot say, however, that the evidence of Dominguez's conviction, which only affected his credibility, would have *required* a different result.

In sum, the Board did not abuse its discretion in declining to grant Decker's petitions to reopen the record and remand to the ALJ. Our conclusion does not mean that the Board cannot reopen a hearing unless the evidence is truly "newly discovered." Rather, we hold only that the Board did not abuse its discretion in this instance.[8]

Decker's final contention is that the Board abused its discretion and denied Decker due process when it declined to modify the original order that Orosco and Dominguez be offered reinstatement. The Board's only explanation was that, for administrative efficiency, those issues "would appear to be best left for resolution at the compliance stage of the proceeding." In its brief the Board states that its usual practice is to consider defenses to an order to offer reinstatement prior to the compliance stage. In fact, the reports demonstrate that the Board's practice is anything but usual. In some cases the Board has refused to order reinstatement, e. g., *East Island Swiss Products, Inc.,* 220 N.L.R.B. 175 (1975); *Hale & Sons Construction,* 219 N.L.R.B. 1073 (1975); *Bob's Ambulance Service,* 183 N.L.R.B. 961 (1970); *John F. Cuneo Company,* 152 N.L.R.B. 929 (1965); *Keco Industries, Inc.,* 121 N.L.R.B. 1213 (1958), though in others it has deferred consideration until the compliance stage, e. g., *Best Industrial Uniform Supply Company, Inc.,* 210 N.L.R.B. 300 (1974); *R. G. LeTourneau, Inc.* 200 N.L.R.B. 425 (1972); *Li'l General Stores, Inc.,* 188 N.L.R.B. 839 n. 2 (1971); *St. Clair Lime Company,* 136 N.L.R.B. 262 (1962); *Coca-Cola Bottling Company of Louisville, Inc.,* 108 N.L.R.B. 490, 494 n. 23 (1954). *Cf. NLRB v. J. H. Rutter-Rex Manufacturing Company,* 396 U.S. 258, 260, 90 S.Ct. 417, 418, 24 L.Ed.2d 405 (1969); *NLRB v. Transport Company of Texas,* 438 F.2d 258, 260 n. 2 (5th Cir. 1971). But it "is not our province to insure an abstract and academic consistency in Board decisions."

*NLRB v. Deaton, Inc.,* 502 F.2d 1221, 1228 (5th Cir.), *cert. denied,* 422 U.S. 1047, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975). Our concern is for the more immediate impact on court procedures.

The reasons which allow the Board to refuse to consider evidence that was not available at the hearing for purposes of credibility determinations do not apply for purposes of deciding entitlement to reinstatement. The credibility determinations involve a retrospective procedure. Thus it is fair and reasonable that the ALJ's determination should be limited to the facts that were available at the time of the hearing. Consideration of remedies, however, is prospective; its concern is with events in the future. "Of course, as we have many times held, the enforcement of the Board's Order by us . . . does not foreclose the opportunity of establishing facts which have occurred subsequent to the hearing on unfair labor practice charges or subsequent to the Board's Order bearing upon compliance with the Order of reinstatement. Appropriate supplemental proceedings are available." *NLRB v. Trinity Valley Iron and Steel Company,* 290 F.2d 47, 48 (5th Cir. 1961). But, when the subsequently occurring facts are made available to the Board within a short time after the Board's order and before the case is brought to a court, there is an additional consideration. The Board's order that an employee be offered reinstatement, if enforced by a court, makes the respondent subject to contempt proceedings if a violation occurs. We have in the past expressed concern for our contempt power and have declined to order enforcement of orders whose breadth exceeds the proven violation. *See NLRB v. Curtis Manufacturing Company,* 421 F.2d 1335, 1337 (5th Cir. 1970). Out of similar solicitude for our contempt powers, we feel that it would be inappropriate to order reinstatement to Orosco and Dominguez when

---

8. For example, in *Preferred Homes Corporation,* 127 N.L.R.B. 1350 (1960), the Board ordered the case reopened to permit the ALJ to consider the effect of a post-hearing conviction on the credibility of one of the Board's witnesses. By contrast, in *Gifford-Hill & Company, Inc.,* 188 N.L.R.B. 337 (1971), the Board declined to reopen the case, saying that the witness' credibility was not crucial to the case. There are other examples; we mention those only to emphasize that the Board's exercise of its discretion has produced differing results.

the Board itself concedes that further proceedings must be held to determine whether the purposes of the Act will be furthered by compelling the company to offer reinstatement. We were faced with a similar situation in *NLRB v. Biscayne Television Corporation*, 289 F.2d 338 (5th Cir. 1961). There the Board conceded that changes in the operation of the corporation might make reinstatement impossible. Nevertheless, the Board ordered reinstatement but announced that it would allow the company to present its defenses at a later stage. Our response to the Board's suggestion in that case is appropriate for the Board's suggestion in this case: "We think this is artificial. It is fraught with much uncertainty which will provoke more controversy, not less. . . . It could be most unfair to leave some or all of these contingent uncertainties to coercive compliance proceedings where mistaken action runs the risk of contempt." *Id.* at 339, 340.

We therefore deny enforcement of the Board's order that the company offer reinstatement to Orosco and Dominguez. That portion of the case is remanded to the Board for it to determine what form of order will best serve the purposes of the Act. We in no way indicate what the Board's conclusion should be, other than to note that should the Board decide to order the reinstatement of Dominguez, it should recall that he was a probationary employee when he was discharged. *See NLRB v. Big Three Industrial Gas & Equipment Company*, 405 F.2d 1140, 1143 (5th Cir. 1969).

ENFORCEMENT GRANTED IN PART, AND, IN PART, DENIED.