NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AUBURN FOUNDRY, INC., Respondent.

No. 85–2527.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1986.

Decided May 30, 1986.

Rehearing Denied June 25, 1986.

---

Elliot Moore, Washington, D.C., for petitioner.

John R. Burns, III, Baker, Daniels & Shoaff, Fort Wayne, Ind., for respondent.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

This appeal presents a single narrowly defined issue for this court's review: whether this court should refrain from enforcing an NLRB order mandating reinstatement where the employer claims to have evidence, unavailable at the time of the hearing before the Board, which allegedly undermines the basis for reinstatement. It is the position of the NLRB that as a general matter this type of order be enforced with any "new" evidence relating to the details or present appropriateness of the remedy being left to the post-enforcement compliance or contempt proceedings. We find that, while the grant of appellate jurisdiction in section 10 of the NLRA (29 U.S.C. § 160(e)) empowering us to remand to the Board in cases of newly discovered evidence precludes wholesale adoption of the NLRB's position, Auburn Foundry has presented no justification for not granting the prayer for enforcement in this case.

I.

The factual setting of this appeal is straight-forward. In May 1982 an administrative law judge determined, after conducting a hearing, that Auburn Foundry had committed an unfair labor practice by discriminatorily discharging a number of employees for their activities during the course of a strike against the company. As a remedy the ALJ recommended that the employees be reinstated and awarded back pay. The case was immediately transferred to the Board in front of which Auburn objected to the reinstatement remedy only as applied to those employees who had been permanently replaced during the strike. Among the discharged employees who had been permanently replaced was George Sanchez.

While the case was still pending before the Board, Auburn entered into a settlement agreement providing for the establishment of a priority hiring system for the discharged employees. Due to a clerical error George Sanchez's name did not appear on the list. But for this omission Sanchez should have been rehired on September 14, 1983. In November of 1983, two months after he should have returned to work at the foundry, Sanchez was arrested for selling drugs to an undercover police officer. As a result of his activities

during his period of unemployment, Sanchez spent the next six months as a prison inmate.

In March 1985, almost three years after first hearing the case and a year after Sanchez's release from prison, the NLRB affirmed the ALJ and ordered reinstatement and back pay for all the aggrieved employees including Sanchez. There is no evidence that during the year and a half period between the arrest and the Board decision Auburn made any effort to notify the NLRB of the change in Sanchez's circumstances. Nor does the record reveal any attempt by Auburn to petition the NLRB for any form of post-order relief on the basis of new evidence. Auburn responded to the decision by entering into a dialogue with the local compliance officer concerning the need for reinstatement and back pay for Sanchez. Auburn has taken the position that Sanchez's arrest and subsequent conviction terminated his right to reinstatement and limited his entitlement to back pay to the period between the date he should have been rehired and the date of the arrest.

The administrative structure that provided the context for this drama is viewed by the NLRB, according to the representations of its counsel, as composed of two distinct proceedings: the unfair labor practice proceeding where the appropriate remedy is determined and the compliance proceeding where any fine-tuning concerning the remedy can take place. In essence the NLRB appears to view the procedures before the Board as "quasi-judicial" while compliance can be viewed as classically administrative. Pursuant to this interpretation of the administrative structure the order of the Board is the final adjudicatory decision concerning the merits and the appropriateness of the remedy. It is this decision that this court must review *based upon the record before the Board*. Once the enforceability of the Board's order has been determined by the judicial system actual enforcement is left to the regional director who may, upon request of the employer, conduct a compliance hearing to structure the specific details of relief, including consideration of changes necessitated by subsequent developments. The only way to obtain judicial review of such a hearing, or more importantly the decision to deny such a hearing, is for the employer to refuse to comply followed by NLRB-initiated contempt proceedings.

Auburn contends that the process, as described by the NLRB, does not comport with a concept of fairness and cannot be justified on any legitimate grounds. According to Auburn there is no justification for this court to lend the full weight of law to an order of the Board when the court is aware of facts that potentially preclude the remedy prescribed by the Board and when the NLRB has no affirmative duty to consider these facts following this court's decision, thus forcing the employer to seek review through contempt. Auburn asserts that the NLRB's asserted justification, that completing compliance prior to seeking enforcement could result in inefficiencies since potentially lengthy remedial fine-tuning would occur without the benefit of a final decision on the correctness of the Board's holding on the underlying merits, is a sham in light of the NLRB's failure to uniformly follow this practice, *see NLRB v. Jacob E. Decker and Sons*, 569 F.2d 357, 366 (5th Cir.1978), and the fact that the NLRB's argument ignores the countervailing expense of seeking court review of an order that ultimately will not be enforced.

## II.

This is not the first time this exact issue has been before an appellate court. Auburn can point to the Fifth Circuit's decision in *Decker, supra,* and an unpublished decision of this court as two instances in which appellate courts have refused to enforce Board orders where the NLRB acknowledged that additional proceedings regarding the appropriateness of the remedy were required. The bulk of cases, however, approve the Board's practice of seeking enforcement of the order to fix liability and to subsequently deal with factual matters that go to the details of remedy. *See,*

*e.g., NLRB v. Nickey Chevrolet Sales, Inc.,* 493 F.2d 103, 105–06 (7th Cir.) *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *NLRB v. Trinity Valley Iron & Steel Co.,* 290 F.2d 47, 48 (5th Cir.1961); *Wallace Corp. v. NLRB,* 159 F.2d 952, 954–55 (4th Cir.1947); *NLRB v. New York Merchandise Co.,* 134 F.2d 949, 952 (2d Cir.1943).

The parties attempt to portray this case as one involving a circuit split in which this court, based upon its evaluation of the competing policy considerations, must choose to affiliate with one side or the other. This is not, however, the reality of this case. This is a case not about competing policies, but about the power of appellate courts: under what circumstances is this court empowered to deny enforcement and remand to the Board on the basis of evidence that was not presented before the Board. This is not a matter which the NLRB, through its administrative structure, can totally control. The scope of appellate review of an agency proceeding is determined by Congress.

■■■■ Appellate review of Board hearings is provided for in section 10(e) of the NLRA, 29 U.S.C. § 160(e), which provides in pertinent part that:

No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. *If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board,* its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record.

(emphasis added). This provision does not distinguish new "material" evidence relating to the remedy ordered from that which relates to the merits, thus precluding the adoption of the NLRB's position that all new evidence relating to the appropriateness of the remedy be deferred to compliance proceedings. An appellate court has the authority, should it choose to use it, to order the Board to review "new facts" that impact on whether the remedy ordered should be enforced. It is important at this juncture to distinguish between claims that go to the need for the remedy at all as opposed to those that go to the specific details of an appropriate remedy. Obviously, materiality of evidence must be determined with reference to the scope of the proceedings before the NLRB. An appellate court cannot declare "material" factual matters which under Board procedures are irrelevant. Thus, we would not listen to arguments concerning the details of a back pay award. *See Nathanson v. NLRB,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). *See also* 29 CFR 101.16 (the NLRB has established post-decision proceedings for back pay but not for reinstatement). There is, however, nothing in the statute that prevents a court, as did the Fifth Circuit in *Decker,* from refusing to enforce a Board order where there is unconsidered evidence that may be material to the need for *any* sanctions or remedies. Here Auburn asserts that it has evidence which completely moots the remedy mandated by the Board.[1] Since the Act does not man-

---

1. Were this court to uniformly adopt the position that all evidence relating to the remedy ordered is beyond our jurisdiction then, in those cases where the evidence may effectively preclude remedial relief, we would be essentially issuing opinions in moot cases. It is difficult to see how judicial or administrative efficiency is served by judicial approval of Board action in cases in which subsequent administrative proceedings may, based on evidence that could be presented to the agency prior to judicial proceedings, render the whole matter nothing more than a statement of wrongdoing unaccompanied by a remedy. The Board asserts that the only

date that we leave employers in this context to the vagaries of compliance, and, possibly, contempt, the NLRB cannot force us to do so either.

■ There are, however, two limitations in section 10(e), one of which precludes Auburn's request for a denial of enforcement. The Act requires any evidence not presented to the Board to be material and excusably unavailable before the Board. Auburn was aware of Sanchez's conviction in 1983, which was subsequent to the Board hearing but two years prior to a final decision. Auburn has not claimed that it was unable during that period to draw the Board's attention to the conviction through some form of written submission. There is no evidence in the record concerning Board procedure with regard to new developments in the period between hearing and decision. If no procedure exists it was Auburn's responsibility to establish that. Additionally, there is no indication in the record that following the Board decision Auburn made any attempt to reopen or request reconsideration. On these facts we cannot hold that Sanchez's conviction was evidence that Auburn could not have attempted to present before the Board. It was Auburn that initially chose to pursue the subsequent developments through compliance. Having done so it must live with that decision.

Since no objection is made to the merits of the Board's decision the order is enforced.

issue in the unfair labor practice proceeding is whether there was a violation. It appears, however, that the agency routinely goes beyond determining a violation and decides upon an ap-

propriate remedy. Thus any evidence relating to the appropriateness of the remedy, as opposed to the details of enforcement, should be before the Board when it orders a type of relief.