## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## HICKS OILS & HICKSGAS, INC., Respondent.

No. 89–2795.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1991.

Decided Sept. 4, 1991.

---

**1141**

KANNE, Circuit Judge.

The Duquoin, Illinois, facility of Hicks Oils and Hicksgas, Inc. housed a small scale oil-blending operation until a new contract with a major oil company necessitated expansion of the work force. Teamsters Local 347, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, learned of the expansion and led a campaign in the fall of 1984 to organize the seventeen workers at the facility. The management at Hicks proved to be decidedly anti-union, as their actions soon confirmed. On November 1, 1984, the Union filed charges with the National Labor Relations Board alleging that the company committed unfair labor practices during the course of the campaign. No election was held; however, a majority of employees signed union authorization cards. Four years later, on March 7, 1989, the Board issued a *Gissel* bargaining order [1] and also directed the company to reinstate with back pay three pro-union employees who had been discharged. Approximately five months later, on August 24, 1989, the Board filed an application for enforcement of the bargaining order. Hicks now asks us to remand this case to the Board so that Hicks can present "additional evidence" of changed circumstances.[2] We consider today both Hicks' motion to remand and the Board's application for enforcement.

Barbara A. Atkin, Judith P. Flower, N.L.R.B., Contempt Litigation Branch, Aileen A. Armstrong, William A. Baudler (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., Joseph H. Solien, N.L.R.B., Region 14, St. Louis, Mo., for petitioner.

Gary A. Wincek (argued), William L. Becker, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Chicago, Ill., Nancy M. Watkins, Wilburn, Suggs & Watkins, St. Louis, Mo., for respondent.

Before CUMMINGS, POSNER and KANNE, Circuit Judges.

## I.

In *Gissel*, the Supreme Court found that the Board has authority to issue an order to bargain where there is a showing that at one point the Union had a majority, "and that employees' sentiment once expressed through cards would, on balance, be better

1. In *Gissel*, the Supreme Court enforced an order by the National Labor Relations Board directing an employer to bargain with the Union without an election because of the employer's unfair labor practices. *Impact Industries, Inc. v. NLRB*, 847 F.2d 379, 381 n. 1 (7th Cir.1988) (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)).

2. Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), provides that, "[i]f either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board ... the court may order such additional evidence to be taken before the Board ... and to be made a part of the record."

protected by a bargaining order." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614–15, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969). "In exercising its *Gissel* power, the Board ought to do what a district judge does when issuing an injunction: determine what remedy is necessary as of the time the order issues." *Montgomery Ward & Co. v. NLRB*, 904 F.2d 1156, 1162 (7th Cir.1990) (Easterbrook, J. concurring). In this case, the Board found that the Union secured an authorization card majority at one point and that the company's violations were "numerous ... and devastating within a unit of only 16 or 17 employees." When the Board issued its decision in March of 1989, it found that the seriousness of the violations made it "highly unlikely that a free and fair election could be held," even at the date of decision, fully four and one half years after the initial charges were filed. The Board also noted that, "no mitigating factors have been adduced by the respondent to show that an election would be more feasible now than when the unlawful conduct ceased."

The company does not contest any of the findings of the National Labor Relations Board. Rather, Hicks argues that additional evidence arose after issuance of the bargaining order which affects the propriety of the bargaining order remedy. The company argues that our decision in *Impact Industries, Inc. v. NLRB*, 847 F.2d 379 (7th Cir.1988), supports their request to remand for further consideration of additional evidence. But the procedural posture in this case differs significantly from that described in *Impact.* There the company attempted to present evidence of employee turnover and changes in management; the Board simply refused to consider the evidence. In contrast, Hicks never attempted to present such evidence to the Board for its consideration. *Impact* does not apply here. The only issue is whether the "new" evidence was "excusably unavailable" for presentation to the Board.

Section 10(e) of the National Labor Relations Act requires that before a court may order the Board to consider "new" evidence a showing must be made that the evidence not presented to the Board was "material and excusably unavailable." *NLRB v. Auburn Foundry, Inc.*, 791 F.2d 619, 623 (7th Cir.1986). Hicks alleges that evidence of "substantial and profound changes" in the bargaining unit, "extensive employee turnover," and "a traumatic change in management" is material and was excusably unavailable. The company claims that in light of this "new" evidence, it may not be in the best interests of current employees to be forced to bargain.

The company admits that it had knowledge of most of the new evidence prior to September 25, 1989, when the Board relinquished jurisdiction by filing the record with this court. For example, even before the Board issued its decision in March the "traumatic" change in management occurred with the death of the president of the company. In 1984, the bargaining unit consisted of seventeen employees; during the 1984 campaign, three of those employees were fired for their union activity. Four other employees left the unit after the Board filed charges but before 1986. Between the years of 1984 and 1988, seven employees were added to the unit. By the time the Board filed its application for enforcement, twelve new employees had been hired and eight of the nine employees who ultimately left the company were gone.

Despite these changes, the company claims that it wasn't until they entered into a settlement agreement on November 2, 1989, with three former employees that they realized the significance of the turnover statistics for 1984–89.[3] But even if the company ultimately expected (and was negotiating) not to reinstate those three employees, nine[4] out of twenty-one (forty-

---

3. The company in its brief states that a settlement was reached "in which those individuals elected not to work at the company *in exchange* for back pay restitution" (emphasis added). We note that the order of the Board issued in March stated that these three employees were entitled to *both* back pay and reinstatement.

4. Our calculation of nine out of seventeen is derived from using a cut-off date of September 25, 1989, for the departure of employees to examine what evidence was actually available to

three *percent*) of all those employed in September of 1989 would have remained from the original group. The company had sufficient time to recognize the significance of the turnover data and present it to the Board. Whether or not the failure to present such evidence to the Board was intentional, *all* of the facts were within the realm of knowledge of the company while the Board had jurisdiction. The difference in employee turnover which resulted from the settlement agreement is not significant and does not render the entire group of facts, which the company had knowledge of, "excusably unavailable."

We can find no reasonable grounds for the company's failure to present evidence of changes in the bargaining unit, employee turnover and management changes to the Board. The company's motion to remand to the Board for consideration of additional evidence is DENIED. Because the company does not otherwise contest the propriety of the bargaining order, we EN-FORCE the order to bargain.

the company between the time the order was issued and the date that the Board relinquished its jurisdiction to our court. After an employee quit, the number of employees who remained from the original bargaining unit of seventeen was eight.